**Antonio Raul AYALA–CHAVEZ, Petitioner,**

v.

**U.S. IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

No. 91–70262.

United States Court of Appeals, Ninth Circuit.

Submitted May 14, 1991.

Decided Sept. 20, 1991.

---

Jay W. Stansell, Northwest Immigrant Legal Services, Seattle, Wash., for petitioner Antonio Raul Ayala–Chavez.

Norah Ascoli Schwarz, U.S. Dept. of Justice, Civil Div., Washington, D.C., for respondent I.N.S.

Before TANG, REINHARDT and THOMPSON, Circuit Judges.

REINHARDT, Circuit Judge:

Petitioner seeks a stay of deportation pending disposition of his petition for review of the Bureau of Immigration Appeals' denial of relief. Prior to 1990, petitioners in his position were ordinarily entitled to an automatic stay of deportation pending such review. *See* 8 U.S.C. § 1105a(a)(3) (1988).[1] That year, however, Congress amended § 1105a(a)(3) to eliminate the automatic stay for aliens who have been convicted of "aggravated felonies." Immigration Act of 1990 ("1990 Act"), Pub.L. No. 101–649, sec. 513(a) (Nov. 29, 1990).[2] The term "aggravated felony" was first defined in the Anti–Drug Abuse Act of 1988 ("ADAA"), Pub.L. No. 100–690, sec. 7342 (Nov. 18, 1988) (codified as amended at 8 U.S.C.A. § 1101(a)(43) (Supp. 1991)). Petitioner was convicted of drug-related crimes prior to the enactment of the 1988 statute. Accordingly, we must resolve an issue of first impression: whether the 1990 amendment denying an automatic stay to aliens convicted of an aggravated felony applies to persons convicted of felonious conduct prior to November 18, 1988.

1. That provision read, in relevant part: "The service of the petition for review ... shall stay the deportation of the alien pending determination of the petition by the court, unless the court otherwise directs."

2. The provision now reads, in relevant part: "The service of the petition for review ... shall stay the deportation of the alien pending determination of the petition by the court, unless the court otherwise directs or unless the alien is convicted of an aggravated felony, in which case the Service shall not stay the deportation of the alien pending determination of the petition of the court unless the court otherwise directs."

We hold that it does not, and that petitioner is entitled to an automatic stay.

BACKGROUND

Petitioner is a Mexican citizen who has resided in this country as a legal permanent resident since 1972. He has lived in Washington State with his parents, siblings, and other family members since he was eight years old, and has been married to a U.S. citizen for nine years. Several of his relatives are U.S. citizens. He has three children, all of whom are U.S. citizens because they were born in this country. He has a steady employment record and has received high praise from his current employer, who testified on his behalf in the immigration proceedings. He supports his parents as well as his wife and children.

In January of 1988, petitioner was arrested on two occasions for referring a police informant to a person who sold the informant cocaine with an aggregate value of $70. In May 1988, he was convicted on two counts of complicity in the sale of cocaine. He was sentenced to 27 months in prison, of which he served 18 before his early release based on good behavior. He received high praise from the warden for his conduct in prison, where he worked as a janitor, volunteered as a translator for inmates, and served as a volunteer fire fighter.

Upon the petitioner's release from prison, the Immigration and Naturalization Service ("Service") commenced deportation proceedings against him pursuant to 8 U.S.C. § 1251(a)(11), based on his convictions. Petitioner conceded deportability and sought discretionary relief from deportation under 8 U.S.C. § 1182(c).[3] The Immigration Judge agreed that petitioner demonstrated statutory eligibility for such relief in that he had been lawfully admitted as a permanent resident alien and had resided in this country for more than seven years. She further found that petitioner had demonstrated good character in his

history of steady employment and family loyalty, and that his family, many of whom are U.S. citizens, would suffer extreme hardship if he were deported.

The Immigration Judge declined to exercise her discretion to grant relief from deportation, however, based on her finding that petitioner had not demonstrated sufficient rehabilitation since his convictions. Petitioner appealed to the Bureau of Immigration Appeals ("BIA"), which dismissed his appeal and upheld the decision of the Immigration Judge. The petition for review in this court followed.

Petitioner filed an emergency motion for a stay of deportation, arguing that the recent elimination of the automatic stay is not applicable to him because his convictions occurred prior to the enactment of the ADAA, or, in the alternative, that we should grant a discretionary stay under the standards established in *Lopez v. Heckler*, 713 F.2d 1432 (9th Cir.), *rev'd in part on other grounds*, 463 U.S. 1328, 104 S.Ct. 10, 77 L.Ed.2d 1431, 464 U.S. 879, 104 S.Ct. 221, 78 L.Ed.2d 217 (1983).[4] We granted a stay pending further order of this court. We now hold that petitioner is entitled to an automatic stay pending final disposition of his petition for review.

ANALYSIS

Petitioner was convicted of drug-related offenses six months prior to the enactment of the ADAA. That statute amended the Immigration and Nationality Act of 1952, as amended, 8 U.S.C. § 1101 *et seq.*, by providing, in part, that an alien convicted of an aggravated felony would be subject to various immigration-related consequences. *See* ADAA, secs. 7343–7349. It defined the term "aggravated felony" in a manner that included the type of conduct for which petitioner had been convicted. *See* ADAA, sec. 7342. In the 1990 Act, Congress added further consequences that flow from a conviction of an aggravated

---

**3.** "Although the literal language of § 1182(c) refers only to the admission of aliens otherwise subject to grounds of exclusion, the provision has long been applied in deportation proceedings as well." *Tapia–Acuna v. INS,* 640 F.2d 223, 224 (9th Cir.1981).

**4.** Because we find that the automatic stay of deportation applies to this petitioner, we do not reach his alternative argument for a discretionary stay.

felony. Among them is the provision we consider here: Persons convicted of aggravated felonies are deprived of the statutory right to obtain automatic stays of deportation pending determination of their petitions for review. *See* 1990 Act, sec. 513(a).

Petitioner argues that because his conviction for drug-related offenses occurred prior to the enactment of the ADAA, he is not subject to the 1990 amendment eliminating the automatic stay of deportation for persons convicted of an "aggravated felony". The 1990 Act does not specify whether automatic stays are eliminated in the case of persons whose convictions occurred prior to the effective date of the ADAA. The language and legislative history of the provision in question are silent on that point.[5] Moreover, the other provisions of the 1990 Act which deal with related questions shed little light on the issue. The parties before us largely ignore those other provisions and urge us instead to conduct our analysis with reference to the related provisions of the ADAA.[6] They are right to do so. Because the 1990 Act simply adds additional provisions to the terms of the underlying statute, the ADAA, and must be interpreted *in pari materia* with it, we look to the ADAA in order to determine whether the 1990 amendment at issue here applies in petitioner's case. Fortunately, the ADAA tells us clearly when amendments of this type before us are retroactive and when they are prospective, and an analysis of that Act provides us with a clear answer to the question we must decide.

The structure of the ADAA plainly demonstrates that in the case of *deportation* proceedings Congress intended to apply the consequences that flow from an aggravated felony conviction only to persons who are convicted of such conduct on or after the effective date of the statute. The treatment of persons subject to deportation is the direct opposite of that afforded persons seeking reentry. In the latter case, the ADAA provides that the consequences that flow from conviction of the type of felonious conduct covered by the statute apply regardless of the date of conviction.

The relevant portion of the ADAA begins with a definition of "aggravated felony." *See* ADAA, sec. 7342. That definition does not state whether the term only covers convictions occurring on or after the date of enactment, or whether it also covers convictions occurring prior to the date of enactment. Instead, the temporal scope of the term is determined in the substantive sections that follow the definition—the sections providing for a variety of consequences that attach upon the conviction of an aggravated felony. *See* ADAA, secs. 7343–7349. Each consequence is listed in its own section, and each section contains an applicability provision which specifically states whether the conviction for the aggravated felony must have occurred on or after the date of enactment.

Of the seven substantive sections that were enacted in the 1988 legislation, four expressly provide, in applicability subsections, that the consequence involved applies only to persons convicted of an aggravated felony on or after the date of enactment, and three provide, necessarily though implicitly, that the consequence also applies to persons convicted prior to that time. The provisions stating that the conviction must have occurred on or after the date of enactment are the provisions that relate to

---

**5.** Section 513(b) of the 1990 Act, which provides an effective date for the elimination of the automatic stay, states that the amendment covers petitions for review filed more than 60 days after enactment of the 1990 Act. Thus, regardless of when the conduct occurred, the amendment applies only to *petitions filed after* the effective date of the Act. In that sense it is prospective. However, the effective date provision, unlike the provisions in the ADAA (and some of the others in the 1990 Act), does not in any way address the substantive retroactivity question—when the *conviction* must have oc-

curred. Thus, it sheds no light on the question before us: whether a person convicted of certain felonious conduct prior to the date of the ADAA's enactment loses the benefit of the automatic stay provision.

**6.** We note that neither party suggests that we consider the other substantive provisions of the 1990 Act, although the government does discuss the effect of the 1990 amendment to the definition of "aggravated felony." We discuss that and other provisions of the 1990 Act *infra*.

the *deportation* of persons in the United States: sec. 7343 (governing deportation of aliens committing aggravated felonies, and eliminating the option of voluntary departure for such aliens), sec. 7344 (providing that conviction for an aggravated felony shall constitute a ground for deportation), sec. 7347 (providing expedited procedures for deportation of aliens convicted of committing aggravated felonies), and sec. 7348 (governing deportation for weapons violations). The applicability subsection of each of these sections states, with only minor variations in language, that it "shall apply to any alien who has been convicted, on or after the date of the enactment of this Act, of an aggravated felony."

By contrast, the applicability subsections that provide for the inclusion of convictions that occurred prior to the date of enactment are all parts of sections that relate to *reentry* by persons previously deported. Section 7345, which provides criminal penalties for the reentry of aliens who were deported subsequent to the conviction of an aggravated felony, states that it "shall apply to any alien who enters, attempts to enter, or is found in, the United States on or after the date of the enactment of this Act." Section 7346, which provides criminal penalties for aiding or assisting the reentry of an alien who has been convicted of an aggravated felony, states that it "shall apply to any aid or assistance which occurs on or after the date of the enactment of this Act." Finally, section 7349, which provides a ten-year bar on the reentry of aliens convicted of aggravated felonies,[7] provides that it "shall apply to any alien convicted of an aggravated felony who seeks admission to the United States on or after the date of the enactment of this Act." Congress's decision not to include in these reentry provisions language similar to that which it used in the deportation sections—language requiring that an alien have been *convicted* on or after the date of enactment—clearly indicates its intent not to limit the applicability of the reentry provisions in a similar fashion. Moreover, each of the reentry provisions

specifically states that it "shall apply [to reentry] *on* or after the date of the enactment of this Act." (Emphasis added.) In order for those sections to apply to reentry "*on* or after" the date of enactment, they must provide for the recognition of aggravated felony convictions that occurred prior to that time. Otherwise, no alien seeking admission to the United States *on* the date of enactment would have been "convicted of an aggravated felony" for purposes of the statute and, despite the express language to the contrary, the new reentry rules would be of no effect *on* November 18, 1988.

The difference in treatment afforded deportation and reentry by the ADAA is a logical one. In the case of deportation, it is not until the deportation proceedings are completed that a person is finally determined to be unfit to remain in the United States. Until that time, the person has the right to appeal an Immigration Judge's adverse decision to the BIA, and then to petition for review in this court. Ultimately, an initial adverse decision may be reversed. In the case of reentry of a previously deported alien, however, the person seeking reentry has already been subject to a final determination that he is deportable. As an outsider seeking permission to reenter a country that previously excluded him, a deported alien is in an entirely different position than an insider challenging a determination of deportability. Similarly, aliens who voluntarily left the country following a conviction of a serious offense are in the position of outsiders when they attempt to reenter the United States. They too are situated differently from persons currently in the country who are undergoing deportation proceedings.

In enacting the ADAA, Congress provided that persons who are convicted of an aggravated felony will be deported under new, expedited procedures, and that they can no longer depart the country voluntarily in lieu of deportation. It stated that, in the case of deportation proceedings, the new rules will only apply to persons convicted of an aggravated felony on or after

---

7. The 1990 Act extended this bar to 20 years. 1990 Act, sec. 514(a).

the date of enactment; those convicted previously remain subject to the ordinary rules. Congress's limitation on the temporal applicability of the new rules demonstrates a sensitivity to the "insider" status of persons subject to deportation proceedings. Given the serious consequences of deportation, it was reasonable for Congress to make the new, harsher rules apply prospectively.

The case before us today involves a question of deportation—not reentry. Congress's 1988 determination that in deportation proceedings the aggravated felony provisions would only apply to persons convicted on or after the date of enactment leads us inevitably to the conclusion that it must, generally, have had a similar limitation in mind when it added additional provisions on that same subject in 1990. Nevertheless, the government argues that the 1990 amendment relating to automatic stays of deportation should be applied differently than the related provisions of the 1988 Act. The effect of the interpretation suggested by the government would be that people convicted prior to enactment of the ADAA would benefit from the ordinary, non-expedited deportation procedures up until the time they sought judicial review. At that point, they would become subject to deportation before the court could rule on their petition. The provision before us, interpreted in that way, would run contrary to the 1988 congressional determination that insofar as deportation proceedings are concerned, people convicted of felonious conduct prior to the enactment of the ADAA would generally retain the statutory benefits that existed prior to the passage of the Act—that the Act would apply prospectively with respect to deportation proceedings.

The provision we consider here did no more than add another consequence of an aggravated felony conviction to the list previously enacted in 1988. In the absence of an express provision demonstrating its intention to alter its policy, we must presume that Congress intended to follow its previously expressed intent to make changes in rights affecting deportation proceedings prospective only. *See* 2A Sutherland Stat. Constr. § 51.02 (4th ed. 1984 rev.). Here,

the provision contains no clearly expressed intention to change that rule. Accordingly, we cannot conclude that in the case of the deportation provision before us Congress departed from its clearly established policy; specifically, we cannot conclude that Congress intended the provision to apply to convictions occurring before November 18, 1988.

The government urges that our construction of the provision must take account of section 501 of the 1990 Act, which modifies the ADAA's definition of "aggravated felony." Section 501 adds several crimes to the list of those already covered in 1988. It makes certain of the additional crimes "aggravated felonies" only if they were committed on or after the date of enactment of the amendment. It makes the rest "effective as if included in the enactment of [the ADAA]." The government argues that the separate applicability provisions show that Congress knew how to make an amendment prospective when it wanted to do so, and that its failure to do so expressly in the ADAA's definition section demonstrates that that section is retroactive. The government is correct in one respect. It is apparent from the various provisions of the ADAA and the 1990 amendments that Congress knew how to make provisions prospective by express language, and that it also knew how to make them retroactive by express language. However, in the case of section 513(a) of the 1990 Act, Congress did neither. Thus, the government's argument adds nothing of any consequence to our endeavors.

Neither party asks us to consider any of the other provisions of the 1990 Act. Notwithstanding that fact, we will examine the relevant ones to see if they should cause us to change our construction of the provision at issue in any way. The 1990 Act contains several sections affecting aliens convicted of committing an aggravated felony. The majority of the provisions that relate to deportation proceedings state that they apply to convictions occurring on or after the date of enactment. However, two such provisions state that they "apply to convictions entered *before,* on, or after [the date

of enactment]." 1990 Act, sec. 505(b) (emphasis added) (determining the effective date for the section that in part eliminates the effect on deportation proceedings of a presidential pardon for an alien convicted of an aggravated felony); sec. 515(b)(2) (emphasis added) (determining the effective date for the section that provides that asylum shall not be available to an alien convicted of an aggravated felony).

■ Normally, Congress's use of the word "before", without further qualification, would lead us to the conclusion that the provisions apply to convictions occurring at *any* time before the date of enactment. Here, however, because the statutory provisions relating to deportation generally apply only to convictions occurring after November 18, 1988, a date more than a year prior to the date of the 1990 amendment, it is not clear whether "before" means at *any* time before 1990 or only at any time before 1990 but after November 18, 1988. However, it does not matter, for our purposes, which interpretation we give the two ambiguous provisions. In either case, the government's argument fails. Obviously, if "before" means only before the 1990 amendments but subsequent to the enactment of the ADAA, our conclusion that the automatic stay provision applies only to post–1988 convictions is unaffected. Similarly, however, our conclusion is unaffected even if we construe the term "before" to mean at *any* time prior to the adoption of the 1990 amendments. For, as we have said earlier, in light of the ADAA's general approach to deportation issues (specifically its adoption of a prospective rule for such proceedings) we would not read a rule of retroactive applicability into a provision affecting deportation cases in the absence of an express congressional directive that we do so. If we read the two ambiguous provisions as providing such an express directive, that reading only makes it clearer that there is

no similar directive with respect to the automatic stay provision. At most, the two provisions in the 1990 Act that contain "before" language demonstrate that by including such express language in those provisions Congress demonstrated a specific intent to create an exception to the general rule of non-retroactivity in those two instances. Because no intention to create a similar exception can be found in the express language of section 513(a), we cannot read that section as the government would like us to. Therefore, whichever reading we give the phrase "before, on, or after," in sections 505(b) and 515(b)(2), the view we have expressed regarding section 513(a) remains unaffected: Section 513(a) simply does not apply to convictions occurring before November 18, 1988.

■ The Service, of course, takes the opposite position and urges us to defer to its view. Such deference is unwarranted in this case. As we have recently reaffirmed, en banc, a reviewing court should defer to an administrative agency only in those areas where that agency has particular expertise. *See Flores v. Meese,* 942 F.2d 1352, 1362 (9th Cir.1991) (en banc). Questions of law that can be answered with "traditional tools of statutory construction" are within the special expertise of courts, not agencies, and are therefore answered by the court de novo. *INS v. Cardoza–Fonseca,* 480 U.S. 421, 446, 107 S.Ct. 1207, 1221, 94 L.Ed.2d 434 (1987). Whether the automatic stay provision is to be given effect in the case of persons whose convictions occurred before the enactment of the ADAA constitutes a pure question of law, and we accordingly do not defer to the agency's view.[8]

Based on our analysis of the statutory structure, we hold that Pub.L. No. 101–649, sec. 513(a) applies only to persons convicted of an aggravated felony on or after November 18, 1988, the date of the ADAA's

---

8. In any case, as we have explained, the agency's interpretation regarding the retroactive effect of the amendment is unreasonable and contrary to the clear intent of the statute. We are therefore obligated to reject it, regardless of any

deference due the agency. *See NLRB v. United Food and Commercial Workers Union,* 484 U.S. 112, 123, 108 S.Ct. 413, 421, 98 L.Ed.2d 429 (1987).

enactment.[9] Aliens convicted of felonious conduct prior to that date remain entitled under 8 U.S.C. § 1105a(a)(3) to an automatic stay of deportation pending the disposition of their appeals. Accordingly, petitioner is entitled to an automatic stay here.

STAY GRANTED.

9. Because we find that congressional intent is clear, we do not attempt to reconcile an apparent conflict between two lines of Supreme Court cases regarding the existence of a presumption for or against retroactivity of legislation. *See Kaiser Aluminum & Chemical Corp. v. Bonjorno,* 494 U.S. 827, 110 S.Ct. 1570, 1577, 108 L.Ed.2d 842 (1990) (citing *Bradley v. Richmond School Board,* 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974) (suggesting a presumption for retroactivity), and *Bowen v. Georgetown University Hospital,* 488 U.S. 204, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988) (applying a presumption for prospectivity)).