Robert SANDERS, Plaintiff,

v.

**CULINARY WORKERS UNION LOCAL NO. 226, Defendant.**

Robert SANDERS, Plaintiff,

v.

**OGDEN ALLIED LEISURE SERVICES, INC., a Delaware Corporation; fka Ogden Food Service Corp.; and Culinary Workers Union Local No. 226; Defendants.**

**Nos. CV–S–89–735 RDF (LRL), CV–S–90–446 RDF (LRL).**

United States District Court, D. Nevada.

April 29, 1992.

Daniel Marks, Las Vegas, Nev., for plaintiff.

J. Thomas Bowen, Las Vegas, Nev., Davis, Cowell & Bowe, San Francisco, Ca., for defendant Culinary Workers Union.

David Barron, Michael J. Keahey, Lefebvre, Barron & Oakes, Las Vegas, Nev., for defendant Ogden Allied Leisure Services.

## AMENDED ORDER

PRO, District Judge.

## I. INTRODUCTION

The Culinary Workers Union, Local No. 226 (Union) seeks summary judgment on

the claims made by Robert Sanders (Sanders) that the Union discriminated against him because of his race, breached his employment contract, breached its covenant of good faith and fair dealing, is liable for negligent and intentional infliction of emotional distress, that he was wrongfully terminated in violation of public policy, and that the Union breached its duty of fair representation. (Doc. No. 22).

Ogden Allied Leisure Services, Inc. (Ogden) seeks summary judgment on the claims made by Sanders that Ogden discriminated against him because of his race, breached his employment contract, breached its covenant of good faith and fair dealing, is liable for negligent and intentional infliction of emotional distress, and that he was wrongfully terminated in violation of public policy. (Doc. No. 24).

The Honorable Roger D. Foley, Senior United States District Court Judge has referred this matter to the undersigned for consideration. For the following reasons, the Union will be granted summary judgment on all of Sanders's claims. Ogden will also be granted summary judgment on all of Sanders's claims.

## II. FACTS

Plaintiff, Robert Sanders, was a member of the Culinary Workers Union employed as a food equipment handler by Ogden Allied Leisure Services which provides catering services to McCarran International Airport at Las Vegas, Nevada. A collective bargaining agreement between Ogden and the Union describes the various rights and responsibilities of the parties. Contained in the agreement is a provision stating that after 40 days service an employee will only be terminated for just cause. The agreement further sets out procedures which must be followed when an employee is terminated. An employee must be given a written warning and a reasonable opportunity to correct any deficiency in performance before he may be discharged except under certain circumstances such as willful misconduct. The agreement also contains procedures governing the filing of grievances and the manner in which they are to be adjusted.

One of Sanders's duties as a food equipment handler was to drive catering trucks to the airplanes. Ogden has procedures for catering an aircraft which require that after a truck is positioned under the aircraft, two employees, a loader and a driver, are to enter the rear of the truck bed and close the rear door. The driver is then to open the front door and raise the truck bed to the catering position using a pair of "deadman" switches located at the front of the truck. By raising the truck from the front, the driver is able to see the aircraft so as to be able to correct any misalignment. Once the truck is in place the driver and loader are then to move the food onto the aircraft. Sanders had been employed by Ogden since 1982 and was familiar with these safety procedures. This is evidenced by his having taken various safety examinations, including one in which he described the above procedures in detail.

On April 9, 1989, Sanders and Mike Ward, another Ogden employee, were catering a flight. Sanders began lifting the truck before he had closed the rear door, using the lifting switch located at the rear of the truck rather than the deadman switch located at the front of the truck. As Sanders attempted to close the rear door it jammed, but he continued to raise the truck. The aircraft and the truck were misaligned and as a result the truck struck the aircraft, puncturing its fuselage. Sanders described the incident in this manner in the accident report made after the incident.

Ogden suspended and then terminated Sanders. The company took no action against the other employee, who is white. Sanders complained to the Union and the Union took his complaint to the board of adjustment. At the board of adjustment meeting Sanders testified according to the above description of the event and Ogden introduced evidence demonstrating that his actions violated established safety procedures. The Union then made a determination that Sanders termination was proper

and refused to pursue his grievance to arbitration.

## III. ANALYSIS.

### 1. STANDARD FOR SUMMARY JUDGMENT

Ogden and the Union have moved for summary judgment on Sanders's claims. A motion for summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a reasonable jury to find by a preponderance of the evidence in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

The moving party has the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), *cert. denied*, 484 U.S. 1066, 108 S.Ct. 1028, 98 L.Ed.2d 992 (1988). The non-moving party has the burden of "showing that there is a genuine issue for trial" by presenting specific facts beyond the pleadings. Fed.R.Civ.P. 56(c); *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. If the non-moving party fails to make a sufficient showing on an essential element of its case—on which he has the burden of proof—the moving party is entitled to a summary judgment as a matter of law. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552. However, in deciding a motion for summary judgment, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513. Accordingly, it is not the function of this court to weigh the evidence, or engage in credibility determinations. *Id.*

### 2. SANDERS'S CLAIM THAT HIS DISMISSAL BY OGDEN WAS RACIAL DISCRIMINATION IN VIOLATION OF TITLE VII UNDER A THEORY OF DISPARATE TREATMENT

Sanders has alleged:

Defendant Ogden discharged Plaintiff using alleged misconduct as a pretext to cover acts of racial discrimination in violation of 42 U.S.C. § 1981 and 42 U.S.C. § 2000(e)-(2)(a)(1) and that the real reason Plaintiff was discharged was because he is black. Under these facts and circumstances, Plaintiff would not have been discharged if he had been white.

Sanders has asserted a cause of action under the disparate treatment theory of Title VII. Title VII provides:

(a) It shall be an unlawful employment practice for an employer—

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin (emphasis added). 42 U.S.C. § 2000e-2(a)(1) (1981).

The Supreme Court has provided a framework under which a plaintiff may use circumstantial evidence to make a prima facia case of racial discrimination in the hiring context. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).[1] In such cases, the plaintiff carries the initial burden of proving by a preponderance of the evidence a prima facie case of discrimination. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981). Using that framework in the discriminatory discharge context, a plaintiff must show (i) that he was within the protected class; (ii) that he was doing the job well enough to rule out the possibility that he was fired for inadequate job performance; and (iii) that his employer sought a replacement with qualifications similar to his own, thus demonstrating a

---

1. A plaintiff may also make out a prima facia case through direct evidence of discrimination but no such evidence has been offered. *Douglas v. Anderson*, 656 F.2d 528, 531 n. 2 (9th Cir. 1981).

continued need for the same services or skills. *Sengupta v. Morrison–Knudsen Co., Inc.*, 804 F.2d 1072, 1075 (9th Cir.1986) (citing *Loeb v. Textron, Inc.*, 600 F.2d 1003, 1013 (1st Cir.1979)).

■ Sanders, who is black, is a member of a protected class. He has failed, however, to make out a prima facie case of racial discrimination under the second prong of the analysis. Ogden has provided deposition testimony stating that Sanders's discharge was for his willful disregard of company safety procedures. Those procedures require that, when catering an airplane, the rear door to the catering truck should be closed before lifting the truck to the airplane.[2] The procedures also require the employee to lift the truck using a switch located in the part of the vehicle closest to the plane where visibility is greatest. Sanders acknowledged in his deposition that he knew these to be the proper procedures. He also acknowledged that he did not follow these procedures which resulted in the truck puncturing the fuselage of the plane. Sanders cannot negate the possibility that he was fired for inadequate job performance. Because he has failed to make a sufficient showing on an essential element of his case—on which he had the burden of proof—Ogden is entitled to a summary judgment as a matter of law. *See Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552.

■ Sanders has alleged that his discharge was a pretext for illegal racially discriminatory motives. Relevant to such a showing would be evidence that white employees involved in acts of comparable seriousness were not terminated. *See McDonnell Douglas Corp. v. Green*, 411 U.S. at 804, 93 S.Ct. at 1825. An employer may justifiably discharge an employee only if the criterion is applied alike to members of all races. *Id.*

In support of his contention that the stated reason for his discharge was a pretext, Sanders has submitted his affidavit stating that similarly situated white employees were treated differently by Ogden. These conclusory statements, unsupported by personal knowledge of the particular events or other evidence, are not sufficient to withstand a motion for summary judgment. While it is true that questions of motive and intent are usually inappropriate for summary judgment, *See Gifford v. Atchison, Topeka and Santa Fe Railway*, 685 F.2d 1149, 1156 (9th Cir.1982), this is not an absolute rule. *Box v. A & P Tea Co.*, 772 F.2d 1372, 1378 (7th Cir.1985).

In *Box*, the plaintiff alleged sexual discrimination. In support of her contention she submitted her affidavit stating that men were not subject to the same disciplinary actions to which women were subjected. *Box v. A & P Tea Co.*, 772 F.2d 1372 (7th Cir.1985). The court granted summary judgment on the basis that her affidavit did not comply with Federal Rule of Civil Procedure 56(e) in that it requires that affidavits be based on personal knowledge, must set forth such fact as would be admissible in evidence, and must "show affirmatively that the affiant is competent to testify" about those facts. *Id.* at 1378. Nothing in her affidavit suggested that she had personal knowledge of those fact and was competent to testify to them. *Id.*

Although Sanders asserts that his affidavit is based upon personal knowledge, the statements do not demonstrate personal knowledge of white employees being treated differently. Furthermore, even if the incidents cited by Sanders had been more than mere assertions, they do not establish that the reason propounded for his discharge was a pretext for discriminatory motives. Discovery has produced only three situations in which an employee willfully disregarded company safety policies and in each of these instances the employee was terminated.[3] The other instances cited by Sanders involved accidents which occurred while safety procedures were being followed. Although the white employee in-

---

**2.** Although Sanders alleges that the door would not close due to mechanical failure, this is of no consequence because the truck should not have been lifted until the malfunction was corrected.

**3.** In one of the incidents, the Union succeeded in getting the employees reinstated because Ogden lacked evidence that they had in fact disregarded any safety procedures.

volved in the incident for which Sanders was dismissed was not fired, Ogden has asserted, and it is undisputed, that this was because he did not disregard the safety procedures and was not responsible for the damage which occurred to the airplane.[4]

Additionally, Sanders asserts a cause of action against Ogden under the disparate impact theory of Title VII and under 42 U.S.C. § 1981. On November 21, 1991, while these motions for summary judgment were pending, the President signed into law the Civil Rights Act of 1991 (the Act). The Act alters the law applicable to both of these claims and presents an issue of first impression in this jurisdiction, whether the Act is to be given retroactive effect.

Courts that have addressed the issue have split on whether retroactive application of the Act is required. *Compare Stender v. Lucky Stores, Inc.*, No. C–88–1467, U.S. Dist.1991 WL 127073 (N.D.Cal. Jan. 7, 1991) (holding that the Act is to be applied retroactively to pending case) *and Mojica v. Gannett Co., Inc.*, 779 F.Supp. 94 (N.D.Ill.1991) (allowing plaintiff to amend her complaint to add compensatory and punitive damages claim and a jury demand in light of changes due to the retroactive application of the Act) *with Van Meter v. Barr*, 778 F.Supp. 83 (D.D.C.1991) (refusing to apply section 102(a) of the Act retroactively to an existing Title VII case involving a federal agency) *and Hansel v. Public Service Co. of Colorado*, 778 F.Supp. 1126 (D.Colo.1991) (because case law requires that the language of Act be interpreted in light of the legislative history, which is unclear, the Act should not be applied retroactively).

The starting point for interpretation of a statute "is the language of the statute itself. Absent a clearly expressed legislative intent to the contrary, that language must ordinarily be regarded as conclusive." *Kaiser Aluminum v. Bonjorno*, 494 U.S.

827, 835, 110 S.Ct. 1570, 1575, 108 L.Ed.2d 842, 852 (1990) (citing *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980)). The Act is completely silent as to whether its provision are to be applied to claims arising prior to its enactment. There are a few provisions from which an inference can be drawn that the Act is to apply retroactively, but there is no clear mandate of retroactivity.

Section 402 of the Act provides:

(a) In General—Except as otherwise specifically provided, this Act shall take effect upon enactment.

(b) Certain Disparate Impact Cases—

Notwithstanding any other provision of this Act, nothing in this Act shall apply to any disparate impact cases for which a complaint was filed before March 1, 1975, and for which an initial decision was rendered after October 30, 1983.

Section 109 of the Act provides:

(c) Application of Amendments—The amendments made by this section shall not apply with respect to conduct occurring before the date of enactment of this Act.

The implication of both 402(b) and 109(c) is that by specifying certain circumstances under which the Act would not apply prior to enactment, that in all other circumstances the Act would apply prior to enactment. If the Act were only to apply prospectively these provisions would be superfluous. *See Stender v. Lucky Stores, Inc.*, No. C–88–1467, U.S.Dist.1991 WL 127073 (N.D.Cal. Jan. 7, 1991) (citing *Kungys v. U.S.*, 485 U.S. 759, 778, 108 S.Ct. 1537, 1550, 99 L.Ed.2d 839 (1988) ("no provision [of a statute] should be construed to be entirely redundant")). Additionally, the fact the Act is to take effect immediately is an indication that Congress believed application of its provisions was urgent. *See In re Reynolds*, 726 F.2d 1420, 1423 (9th Cir. 1984). While these provisions support an

---

4. Sanders contends that the other employee involved in the incident should have hit a shut down switch to halt the lifting of the truck in order to avert the collision. There are no safety procedures requiring such action so that the failure to act cannot be a basis for attributing responsibility to the other employee.

interpretation that the Act is to be applied retroactively, they are not conclusive.

Furthermore, a review of the legislative history of the Act provides no guidance on this issue. Senator Danforth, a cosponsor of the legislation, stated that he believed the Act was to have prospective application only, this belief being based upon his interpretation of prevailing Supreme Court rules of construction. *See* 137 Con. Rec. § 15,483 (daily ed. Oct. 30, 1991). Senator Kennedy expressed the opposite view that the Act should be given retroactive application because that was his understanding when he became the leading Democratic sponsor of the bill and also based upon his reading of the Supreme Court's rules of construction. *Id.* at § 15,485. Ultimately there are only inconsistent statements from various Congressmen and Senator Kennedy acknowledged that it will be up to the courts to determine the extent to which the bill will apply to cases and claims that are pending on the date of enactment. *Id.*

■ The Supreme Court has set forth two inconsistent precedents, creating a great deal of confusion, concerning what a court should do when the language and the legislative history of an act are inconclusive on the issue of retroactivity. In one line of cases, it was held that a court is to apply the law in effect at the time it renders its decision unless doing so would result in manifest injustice to one of the parties or unless there is a clear congressional intent to the contrary. *See Bradley v. School Board of City of Richmond*, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974). In the other line of cases, retroactivity is disfavored and statutes will not be construed to have a retroactive effect unless the language requires otherwise. *See Bowen v. Georgetown University Hospital*, 488 U.S. 204, 109 S.Ct. 468, 102 L.Ed.2d

493 (1988).[5] Although the Supreme Court has gone so far as to acknowledge that an apparent tension exists between these two precedents, it has not resolved the issue of which is to control.[6] *See Kaiser Aluminum v. Bonjorno*, 494 U.S. 827, 110 S.Ct. 1570, 108 L.Ed.2d 842 (1990) (the congressional intent was clear so that it was unnecessary to resolve any inconsistencies in the cases).

This Court fails to see how these two cases can be reconciled. Although the Ninth Circuit has acknowledged the holding in *Bowen*, the court has continued, fairly consistently, to adhere to the presumption of retroactivity stated in *Bradley*. *See FDIC v. New Hampshire Insurance Co.*, 953 F.2d 478 (9th Cir.1991) (citing to *Bradley* in applying presumption of retroactivity to a newly enacted statute of limitations because of the absence of clear congressional intent to the contrary and because no manifest injustice would result); *See Also Gonzalez v. Aloha Airlines, Inc.*, 940 F.2d 1312, 316 (9th Cir.1991); *Ayala–Chavez v. U.S. INS*, 945 F.2d 288, 295 n. 9 (9th Cir.1991). *But See Nelson v. Ada*, 878 F.2d 277, 280 (9th Cir.1989) (the court stated a presumption of prospective application without citation to either case). This court is bound by the precedent set by the Ninth Circuit and will therefore apply the rule enunciated in *Bradley*. Under *Bradley*, it is presumed that the Act applies to the present case unless there is a clearly expressed congressional intent to the contrary or if it would be manifestly unjust to apply the new Act. 416 U.S. at 716, 94 S.Ct. at 2018.

■ As the legislative history and the absence of any specific directive in the statute demonstrates, there was no clear legislative intent to make the Act either prospective or retroactive. Among the stated

---

**5.** The cases upon which *Bowen* relies make clear the "unless the language requires otherwise" means an explicit legislative mandate, not merely a vague indication of intent. *See e.g. Greene v. United States*, 376 U.S. 149, 160, 84 S.Ct. 615, 621, 11 L.Ed.2d 576 (1964); *Claridge Apartments Co. v. Commissioner*, 323 U.S. 141, 164, 65 S.Ct. 172, 185, 89 L.Ed. 139 (1944). It cannot, therefore, be successfully argued that under *Bowen* the Act would be given retroactive effect.

**6.** Justice Scalia takes the position that the two cases are in irreconcilable contradiction and that the rule set forth in *Bradley* and *Thorpe v. Housing Authority of City of Durham*, 393 U.S. 268, 89 S.Ct. 518, 21 L.Ed.2d 474 (1969) should be overruled. *See Kaiser Aluminum v. Bonjorno*, 494 U.S. 827, 110 S.Ct. 1570, 108 L.Ed.2d 842 (1990) (Scalia, J., concurring).

purposes of the Act was to restore the test employed in disparate impact cases to the one enunciated in *Griggs v. Duke Power*, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971) which had been limited by the Supreme Court in *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989), and to reverse recent Supreme Court decisions by expanding the scope of relevant civil rights statutes in order to provide greater protection to victims of discrimination. Where a new rule is merely a restoration of a prior rule that had been changed by the courts, it is presumed to have retroactive application. *See Mrs. W. v. Tirozzi*, 832 F.2d 748, 755 (2d Cir.1987); *Leake v. Long Island Jewish Medical Center*, 695 F.Supp. 1414, 1417 (E.D.N.Y.1988), aff'd, 869 F.2d 130 (2d Cir. 1989); *See Also Ayers v. Allain*, 893 F.2d 732, vacated & re'd en banc, 914 F.2d 676 (5th Cir.1990) (en banc), cert. granted, —— U.S. ——, 111 S.Ct. 1579, 113 L.Ed.2d 644 (1991). It therefore follows from the remedial nature of the Act that Congress was not expressing a clear intent that the Act only apply prospectively. In the absence of such clear intent, under *Bradley*, retroactive application is favored.

■ In determining whether application of the Act will result in manifest injustice, the inquiry should center upon (a) the nature and identity of the parties, (b) the nature of their rights, and (c) the nature of the impact of the change in the law upon those rights. *Bradley v. Richmond School Board*, 416 U.S. 696, 717, 94 S.Ct. 2006, 2019, 40 L.Ed.2d 476 (1974).

■ The parties are an employee and his employer whom he has alleged has discriminated against him because of his race and also has allegedly used employment practices that have had a discriminatory impact upon others. Although these are both private litigants, the interests that the employee is seeking to protect are of great public concern. It is exactly this concern over discrimination and its effects which prompted Congress to act in passing the 1991 Civil Rights Act. As the Supreme Court noted, "when the Civil Rights Act of 1964 was passed, it was evident that en-

forcement would prove difficult and that the Nation would have to rely in part upon private litigation as a means of securing broad compliance with the law." *Bradley*, 416 U.S. at 719, 94 S.Ct. at 2020 (quoting *Newman v. Piggie Park Enterprise, Inc.*, 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968)). Although this statement was made in the context of securing attorney's fees for a Title II plaintiff who cannot recover damages, the use of private enforcement as mechanism to ensure enforcement of matters of public concern is the same. As Chief Justice Marshall noted, "[in] great national concerns ... the court must decided according to existing law". *Bradley*, 416 U.S. at 719, 94 S.Ct. at 2020 (quoting *United States v. The Schooner Peggy*, 1 Cranch, at 110, 2 L.Ed. 49 (1801)).

"The second aspect of the Court's concern that injustice may arise from retrospective application of a change in the law relates to the nature of the rights effected by the change." *Bradley*, 416 U.S. at 720, 94 S.Ct. at 2020. If retroactive application would deprive a party of a right that had matured or become unconditional then it would be manifestly unjust. *Id.* (citing to *Greene v. United States*, 376 U.S. 149, 160, 84 S.Ct. 615, 621, 11 L.Ed.2d 576 (1964)). Ogden, the employer, never had a mature or unconditional right to use discriminatory employment practices. No injustice can arise from such application of the Act.

Lastly, the court is concerned with the nature and impact of the change in the law upon existing rights. Even though the Act broadens the remedies available to Sanders, the discriminatory conduct which Ogden allegedly participated in was prohibited before the new Civil Rights Act was enacted. Thus, it cannot be said that Ogden would have acted any differently. Additionally, although an employee is entitled to a more liberal standard in demonstrating that an employment practice has a discriminatory impact, the employer had no vested right in a stricter requirement. Such an interpretation would be tantamount to saying that the employer had a right to make it difficult for an employee to prove dis-

crimination. Clearly, the changes wrought by the Act would not result in manifest injustice if applied to these parties. The Civil Rights Act will therefor be given retroactive effect and applied to this case.

### 3. SANDERS'S CLAIM THAT OGDEN'S EMPLOYMENT PRACTICES HAVE A DISPARATE IMPACT ON MINORITIES IN VIOLATION OF TITLE VII

▆▆▆ To prevail on a claim of disparate impact under Title VII, a plaintiff must show that a facially neutral employment practice has a significantly discriminatory impact upon a protected class. *Connecticut v. Teal*, 457 U.S. 440, 446, 102 S.Ct. 2525, 2530, 73 L.Ed.2d 130 (1982). Only after the plaintiff has made this initial showing does the burden shift to the defendant to show that the challenged practice was a business necessity. *Griggs v. Duke Power Co.*, 401 U.S. 424, 432, 91 S.Ct. 849, 854, 28 L.Ed.2d 158 (1971) (Civil Rights Act of 1991, Pub.L. No. 102–166, 105 Stat. 1071, 1074, to be codified at 42 U.S.C.A. § 2000e–2). Ogden's practice is to discharge employees when their failure to obey company safety standards results in damage to an aircraft. Sanders has offered no evidence indicating that this practice has a disparate impact on black employees.[7] In the absence of such a showing, Ogden need not demonstrate the business necessity of its practice.

### 4. SANDERS'S CLAIM OF DISCRIMINATION UNDER 42 U.S.C. § 1981

Sanders also asserts a cause of action under 42 U.S.C. § 1981 which provides:

(a) All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and actions of every kind, and to no other.

(b) For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits and privileges, terms, and conditions of the contractual relationship (added by the Civil Rights Act of 1991, Pub.L. No. 102–166, 105 Stat. 1071, 1072).[8]

▆▆▆ A showing of disparate impact is insufficient to sustain a cause of action under § 1981. *General Bldg. Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 391, 102 S.Ct. 3141, 3150, 73 L.Ed.2d 835 (1982). Liability under this section requires a showing of discriminatory motive. *Id.* The plaintiff has the initial burden of proving, by a preponderance of the evidence, a prima facia case of discrimination. *Patterson v. McLean Credit Union*, 491 U.S. 164, 186, 109 S.Ct. 2363, 2377, 105 L.Ed.2d 132 (1989). The Court in *Patterson* made clear that the analysis used for Title VII cases was applicable to alleged violations of § 1981. *Id.* at 186, 109 S.Ct. at 2377.[9] Sanders has failed to make out a prima facie case of discrimination under Title VII (*See infra* pp. 91–92) and, since the analysis is the same, has failed to make a prima facie case under § 1981.

---

**7.** Under both the pre-Act test employed in *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989) and under *Griggs*, Sanders has failed to demonstrate disparate impact. Whether the Civil Rights Act is applied retroactively or not, is therefor not dispositive of this claim.

**8.** This provision was added by the Act to overturn the Supreme Court's interpretation of section (a) as only applying to conduct at the initial formation of the contract and to conduct which impairs the right to enforce contract obligations through legal process. *Patterson v. McLean Credit Union*, 491 U.S. 164, 181–182, 109 S.Ct. 2363, 2375, 105 L.Ed.2d 132 (1989). The Court

in *Patterson* had reasoned that in Title VII Congress set up elaborate administrative procedures to assist in the investigation of discrimination in the work place and a broad reading of § 1981 to cover post formation conduct would undermine these procedures. 491 U.S. at 182. Discharge was held to be the type of post-formation "breach of contract" conduct not protected by section 1981. *Courtney v. Canyon Television & Appliance Rental, Inc.*, 899 F.2d 845, 849 (9th Cir.1990).

**9.** This portion of *Patterson* was not altered by the Act.

## 5. SANDERS'S CLAIM THAT THE UNION'S FAILURE TO ARBITRATE HIS GRIEVANCE WAS RACIAL DISCRIMINATION

Sanders alleges that the Union refused to arbitrate his termination grievance in violation 42 U.S.C. § 2000e–2(a)(1) [10] and 42 U.S.C. § 1981, under the pretext that he could not prevail.

In order to maintain an action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, a plaintiff must file a charge with the Equal Employment Opportunity Commission (EEOC) within 300 days after the alleged discriminatory act. 42 U.S.C. § 2000e–5(e) (1981).[11] Within ten days after a charge is filed, it must be served upon the respondent. *Id.*

Sanders has not filed a charge with the EEOC against the Union. He did file an intake form against Ogden with the Nevada Equal Rights Commission in which he put an "X" next to the line which read "failure to represent (Union)" and indicated that the Union failed to take his claim to arbitration.

 Although equitable considerations in certain cases will warrant deviation from a strict application of the filing requirement, this is not such a case. The particular purpose of the statute is to give prompt notice to the party accused of the discriminatory conduct. *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 398, 102 S.Ct. 1127, 1135, 71 L.Ed.2d 234 (1982). The Union received no notice at all. While the remedial purpose of Title VII and the paucity of legal training among those whom it is designed to protect requires that charges to be filed before the EEOC be construed liberally, *Kaplan v. International Alliance of Theatrical Employees*, 525 F.2d 1354, 1359 (9th Cir.1975), there must at least be a charge filed to be construed.

Sanders relies on *Casavantes v. Calif. State University*, 732 F.2d 1441 (9th Cir. 1984) in which a plaintiff's intake form was deemed sufficient by the court to satisfy the filing requirements. In *Casavantes* the plaintiff filed *pro se*, the deficiencies in the intake form were cured by the subsequent filing of a formal complaint, and there was no indication that the defendant lacked notice of the claim. Unlike *Casavantes*, whether Sanders filed *pro se* is disputed by the parties. No formal charge was ever filed by Sanders against the Union which could be deemed to relate back to the intake form, and the Union did not have notice of the claim until after the expiration of the 300 day limit.[12]

Furthermore, Sanders's complaint against Ogden cannot serve as the basis for his action against the Union. The Ninth Circuit has held that a plaintiff who fails to name a party in a charge filed with the EEOC and who fails to allege facts from which it is clear that a particular defendant is intended is precluded from thereafter bringing a Title VII action against that party. *See Stache v. International Union of Bricklayers*, 852 F.2d 1231 (9th Cir.1988) (Plaintiff's suit against international union precluded because of failure to name it specifically). *See Also Bratton v. Bethlehem Steel Corp.*, 649 F.2d 658 (9th Cir.1980) (Union dismissed from suit because plaintiff's charges neither named union nor alleged facts from which it could be inferred that the Union violated Title VII).

 Sanders has also asserted claims of disparate treatment and disparate impact against the Union under 42 U.S.C. § 1981.

---

**10.** This court will presume that Plaintiff was referring to 42 U.S.C. § 2000e–2(c) which prohibits discriminatory practices by labor organizations.

**11.** An aggrieved party must file his charge with the EEOC within 180 days under the statute unless, as is the case here, he has first filed with the appropriate state agency.

**12.** Sanders alleges that the Nevada Equal Rights Commission advised him that he could not file a charge against the Union. While administrative error may be a basis for setting aside the filing requirements, *See Albano v. Schering–Plough Corporation*, 912 F.2d 384 (9th Cir.1990), Sanders was represented by counsel at the time that he filed his charge against Ogden and it was incumbent upon his attorney to apprise him at that time of the requirement that he also file a charge against the Union.

A showing of disparate impact is insufficient to sustain a cause of action under § 1981. *General Bldg. Contractors Ass'n v. Pennsylvania,* 458 U.S. 375, 391, 102 S.Ct. 3141, 3150, 73 L.Ed.2d 835 (1982). For Sanders to succeed in showing racial animus through disparate treatment analysis, he must produce evidence that the grievances of similarly situated white employees were treated differently than was his grievance by the Union. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 804, 93 S.Ct. 1817, 1825, 36 L.Ed.2d 668 (1973). *See Also Gay v. Waiters' & Dairy Lunchmen's Union,* 694 F.2d 531, 537 (9th Cir.1982).

Sanders cited two instances in which he alleges white union members were similarly situated and yet treated differently by the Union. The Union has come forward with sufficient evidence of dissimilarity so that no material factual dispute precludes the granting of summary judgment. *See Pejic v. Hughes Helicopters, Inc.,* 840 F.2d 667 (9th Cir.1988) (The court decided on a motion for summary judgment that the Union's reason for failing to process a plaintiff's grievance was legitimate).

The first instance cited by Sanders involved damage to an aircraft which was discovered the morning after two employees completed their assigned shift. Ogden sought to dismiss the two white employees for misconduct. In that case, there were no witnesses to what had occurred and the employees denied any wrong doing. The Union articulated the legitimate, non-discriminatory reasons for arbitrating their case as a lack of proof of wrong doing and the employees claim of innocence. Unlike that case, Sanders has acknowledged his culpability in that he knew what company procedures were and yet disregarded them. Furthermore, there is no question of proof that the damage to the aircraft is directly attributable to his action given that another worker and the airplane passengers witnessed the accident.

The second instance Sanders draws to this courts attention involved an employee who was discharged for fighting. Although this was a direct disregard of company rules, the Union did grieve the employee's case. The Union contends, and this court agrees, that an inconsequential disregard of company rules is qualitatively different than one which results in substantial property damage. *See generally Johnson v. Artim Transp. System, Inc.,* 826 F.2d 538 (7th Cir.1987) and *Tate v. Weyerhaeuser Co.,* 723 F.2d 598 (8th Cir.1984) (Both cases recognized the Unions' right not to arbitrate its members' grievances because of differences in severity of the infractions of its members and thus the Unions' actions did not constitute disparate treatment). Additionally, the Union has on two previous occasions processed grievances on Sanders's behalf, a fact which mitigates against drawing an inference that he has been singled out for discriminatory treatment.

■ Ogden and the Union have alleged that Sanders's state law claims have been preempted by § 301 of the Labor Management Relations Act of 1947 which states:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce ... may be brought in any district court of the United States having jurisdiction of the parties ... 29 U.S.C. § 185(a) (1978).

This section has been interpreted to require preemption of alleged contract violations, as well as some state tort claims, in order to provide a unified body of federal common law to be used to address disputes arising out of labor contracts. *See Allis-Chalmers Corp. v. Lueck,* 471 U.S. 202, 210–211, 105 S.Ct. 1904, 1910–11, 85 L.Ed.2d 206 (1985). The proper test for preemption is whether resolution of the state law claim requires interpretation of the collective bargaining agreement. *Lingle v. Norge Division, Magic Chef,* 486 U.S. 399, 413, 108 S.Ct. 1877, 1885, 100 L.Ed.2d 410 (1988).

## 6. BREACH OF CONTRACT

■ Sanders has alleged breach of contract against Ogden for his discharge and

breach of contract against the Union for its refusal to arbitrate his claim against Ogden. The only basis for deciding whether a breach of contract has occurred would be by reference to the terms of the collective bargaining agreement. Article 6 of the collective bargaining agreement provides that an employee may not be discharged except for "just cause". A determination of the meaning of "just cause" would be necessary to resolve this dispute and hence the claim is preempted. The terms and condition governing the filing of grievances and arbitration are also set forth in the collective bargaining agreement. Suit for breach of a collective bargaining agreement is governed exclusively by federal law under § 301. *See Jackson v. Southern California Gas Co.*, 881 F.2d 638, 642 (9th Cir.1989) (quoting *Newberry v. Pacific Racing Ass'n*, 854 F.2d 1142, 1146 (9th Cir.1988)).

### 7. BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

■■■ Sanders's claim for breach of the implied covenant of good faith and fair dealing is also preempted under § 301. The Ninth Circuit has held that the implied covenant is waived where the collective bargaining agreement contains terms concerning job security. *Cook v. Lindsay Olive Growers*, 911 F.2d 233, 238 (9th Cir. 1990); *Young v. Anthony's Fish Grottos*, 830 F.2d 993, 1000 (9th Cir.1987). The rationale for preempting this cause of action is that the covenant of good faith and fair dealing was designed to protect the job security of employees who at common law could be fired at will and no comparable lack of job security exists for unionized employees. *Young* at 999.

As previously noted, the collective bargaining agreement sets forth that employees may only be terminated for just cause. The agreement further details what procedures must be followed by the company in order to terminate an employee including warning requirement and written notification of grounds for dismissal. Because the agreement covers employee job security, Sanders's claim is preempted.

### 8. INTENTIONAL AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

■■■ Sanders's claims of negligent and intentional infliction of emotional distress resulting from the termination of his employment arise out of the same conduct which formed the basis of his contract claim. Because resolution of the claims is inextricably intertwined with the interpretation of the collective bargaining agreement, they are preempted. *See Jackson v. Southern California Gas Co.*, 881 F.2d 638, 645 (9th Cir.1989) (Disputes concerning employment relationship were governed by the agreement and therefore preempted); *See Also Chmiel v. Beverly Wilshire Hotel Co.*, 873 F.2d 1283, 1286 (9th Cir.1989) (Collective bargaining agreement stated that employee could be terminated only for just cause and claim of intentional infliction of emotional distress arose out of same conduct that formed basis of employee's preempted breach of contract claim).

### 9. WRONGFUL TERMINATION

■■■ Sanders has alleged that he was wrongfully terminated by Ogden and the Union in violation of the strong public policy and common law of the state of Nevada for making complaints to OSHA about health and safety violations on the job. As a threshold matter it must be determined whether this claim is preempted by § 301.

As the Supreme Court noted "section 301 does not, however, preempt every employment dispute tangentially involving a collective bargaining agreement; for example state rules establishing rights independent of a labor contract are not preempted." *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 211–212, 105 S.Ct. 1904, 1911, 85 L.Ed.2d 206 (1985). The test for preemption of a tort claim is whether the state "confers nonnegotiable state-law rights on employers or employees independent of any rights established by contract, or instead, whether evaluation of any tort claim is inextricably intertwined with consideration of the terms of the labor contract." *Id.* at 213, 105 S.Ct. at 1912.

The Ninth Circuit has held that a claim is not preempted if it poses no significant threat to the collective bargaining process and furthers a state interest in protecting the public transcending the employment relationship. *Paige v. Henry J. Kaiser Co.,* 826 F.2d 857, 863 (9th Cir.1987). In *Paige* the Court held that a plaintiff's claim for wrongful discharge due to safety complaints under California's OSHA regulations was not preempted. *Id.* The court reasoned that state health safety standards protect all workers, irrespective of any labor agreement and the state's interest in providing a private cause of action was the enforcement of the underlying statute or policy, not to regulate the employment relationship. *Id.* A claim is preempted, however, if it is not based on any genuine state public policy. *Young v. Anthony's Fish Grottos, Inc.,* 830 F.2d 993 (9th Cir.1987) (Quoting *DeSoto v. Yellow Freight Sys.,* 820 F.2d 1434, 1437–1438 (9th Cir.1987).

The Nevada Supreme Court has held that the dismissal of an employee for seeking a safe and healthy work environment is contrary to the public policy of Nevada. *D'Angelo v. Gardner,* 107 Nev. 704, 819 P.2d 206, 216 (1991). In recognizing a cause of action for tortious discharge the Court referred to the Nevada Occupational Safety and Health Act which specifically states that "the legislature finds that such safety and health in employment is a matter greatly affecting the public interest of this state." *Id.* (Citing Nev.Rev.Stat.Ann. § 618.015 (Michie 1986)). In *D'Angelo* the plaintiff had refused to work near cyanide because of the danger it posed to his health because he had an unhealed surgical wound. *Id.,* 819 P.2d at 214. The Court cited to NRS 618.385(1) which expressly prohibits employers from requiring employees to go or be in any place which is not safe and healthful.

This claim, grounded in state law, for wrongful discharge for public policy reasons, poses no threat to the collective bargaining process. *Garibaldi v. Lucky Food Stores,* 726 F.2d 1367, 1375 (9th Cir.1984). It does not alter the economic relationship between the employer and employee and it furthers the state's interest in protecting the general public—an interest which transcends the employment relationship. *Id.* Sanders's allegation of retaliatory discharge for reporting OSHA violations is therefore not preempted by § 301.

The issue thus presented is whether a genuine issue of material fact exists so as to preclude summary judgment for the Union. Sanders acknowledged in his deposition that the Union had nothing to do with his termination by Ogden. Having established no causal connection between Ogden's decision to discharge him and the Union, Sanders's claim must fail. He further asserts that the Union contract required that boots and gloves be supplied to employees and that the Union failed to pursue these rights under the contract. To the extent that Sanders's claim is based upon rights established by the collective bargaining agreement, rather than on state created rights, it is preempted by § 301.

 In his claim against Ogden, Sanders has asserted that management terminated him in retaliation for a complaint he made to OSHA. This complaint was filed in December, five months prior to Sanders's termination. At that time, Sanders states that he was questioned by three Ogden managers about a meeting he had with other employees and he informed them that the meeting was about safety violations. He further states that he knew that Ogden knew that he had complained to OSHA because he had informed a management employee of his intention to do so. Both Ogden's General Manager and its Regional Vice President, who made the decision to terminate Sanders, have stated in their depositions that they were unaware of his complaint to OSHA. There is no evidence that anyone at Ogden actually knew that Sanders had complained to OSHA and, assuming that a few of the managers did know, there is no evidence that those responsible for his termination had been notified of this fact. Even assuming that Ogden was aware of his complaint, this does not present a factual dispute which rises to the level of materiality necessary to withstand summary judgment. Five months had elapsed between

the time Sanders filed his complaint and his termination, a sufficient time to negate the presumption that the discharge was retaliatory. Furthermore, he was discharged for purposefully disobeying company procedures which resulted in substantial damage to an aircraft. While *Anderson v. Liberty Lobby Inc.* requires this court to draw all justifiable inference in Plaintiff's favor, an inference of retaliatory termination in these circumstances would not be justified. 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

## 10. DUTY OF FAIR REPRESENTATION

 The duty of fair representation is a judicially established rule imposed on labor organizations because of their status as the exclusive bargaining representative for all of the employees in a given bargaining unit. *Peterson v. Kennedy,* 771 F.2d 1244, 1253 (9th Cir.1985). A breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith. *Vaca v. Sipes,* 386 U.S. 171, 190, 87 S.Ct. 903, 916, 17 L.Ed.2d 842 (1967). Because a union balances many collective and individual interests in deciding when and to what extent it will pursue a particular grievance, courts should accord substantial deference to a union's decisions regarding such matters. *Peterson v. Kennedy,* 771 F.2d 1244, 1253 (9th Cir.1985) (quoting *Johnson v. United States Postal Service,* 756 F.2d 1461, 1466 (9th Cir.1985, as amended May 3, 1985)). Mere negligence on the part of the union does not constitute a breach of the union's duty of fair representation. *United Steelworkers v. Rawson,* 495 U.S. 362, 371–73, 110 S.Ct. 1904, 1911, 109 L.Ed.2d 362 (1990).

 Sanders has alleged that the Union conducted no investigation of his discrimination claim, did not review his personnel records or those of other employees charged with accidents, and failed to take his claim to arbitration. The Union has produced evidence that it filed a grievance on Sanders's behalf and that its representa-

tive Mr. Bonaventure argued for his reinstatement at the Board of Adjustment hearing. At the hearing Ogden and Sanders testified to Sanders's acts which caused damage to the aircraft and Ogden showed that these acts violated established safety procedures. Mr. Bonaventure then conferred with his colleagues at the Union and, based upon the evidence, concluded that Sanders had committed willful misconduct and that further prosecution of his grievance was unwarranted.

In *Peterson v. Kennedy,* the Ninth Circuit reviewed those cases in which unions had been found to have acted arbitrarily and gleaned the following factors: 1) the union failed to perform a procedural or ministerial act; 2) the act in question did not require the exercise of judgment and; 3) there was no rational and proper basis for the union's conduct. 771 F.2d 1244, 1254 (9th Cir.1985). A union's action will not be deemed arbitrary if it involves an exercise of judgment. *Id.* Sanders has failed to point to any action by the Union that would satisfy the above criteria. While the Union may not have taken into account all of the factors deemed relevant by Sanders, this does not mean that they acted arbitrarily toward him. The Union made a reasoned decision not to pursue Sanders's claim further because after hearing his testimony they concluded that his termination was warranted under the contract and his grievance lacked merit. This court will not second guess that judgment. *See Peters v. Burlington Northern R.R.,* 914 F.2d 1294, 1301 (9th Cir.1990) (When union's explanation for its decision is based on reasoning, the court will not question whether the reasoning was faulty or not).

Furthermore, Sanders has presented no evidence that the Union's decision not to arbitrate was made in bad faith. *See Banks v. Bethlehem Steel Corp.,* 870 F.2d 1438, 1444 (9th Cir.1989) ("Unions do not have an absolute duty to take every grievance to arbitration"). "A disagreement between a union and the employee over a grievance, standing alone, does not constitute evidence of bad faith, even when the employee's grievance is meritorious." *Id.* at 1444 (citing *Moore v. Bechtel Power*

*Corp.*, 840 F.2d 634, 637 (9th Cir.1988)). No plausible ulterior motive has been presented by Sanders from which this court could infer that the Union's actions were taken in bad faith.

Lastly, Sanders's claim that the Union acted in a discriminatory manner is without merit. As previously discussed in analyzing Sanders's § 1981 claim, there has been no evidence presented that other Union members who were similarly situated were treated any differently than he was treated.

### IV. CONCLUSION

For the forgoing reasons, IT IS ORDERED THAT THE UNION is granted summary judgment on Sanders's claims of racial discrimination, breach of contract, breach of the covenant of good faith and fair dealing, intentional and negligent infliction of emotional distress, and breach of the duty of fair representation. (Doc. No. 22).

IT IS FURTHER ORDERED THAT OGDEN is granted summary judgment on Sanders's claims of racial discrimination, breach of contract, breach of the covenant of good faith and fair dealing and intentional and negligent infliction of emotional distress. (Doc. No. 24).