Jorge Luis BUITRAGO–CUESTA,
Petitioner,

v.

IMMIGRATION AND
NATURALIZATION SERVICE,
Respondent.

No. 1042, Docket 92–4082.

United States Court of Appeals,
Second Circuit.

Argued Feb. 24, 1993.

Decided Oct. 13, 1993.

John L. Sander, New York City (David A. Lebowitz, Paul, Hastings, Janofsky & Walker, of counsel), for petitioner.

William J. Hoffman, Asst. U.S. Atty., New York City (Mary Jo White, U.S. Atty., S.D.N.Y., Gabriel W. Gorenstein, Asst. U.S. Atty. James A. O'Brien, III, Sp. Asst. U.S. Atty., of counsel), for respondent.

Before: WALKER and McLAUGHLIN, Circuit Judges, and GRIESA, Chief District Judge.*

* Chief Judge Thomas P. Griesa of the United States District Court for the Southern District of New York sitting by designation.

WALKER, Circuit Judge:

Jorge Luis Buitrago–Cuesta ("Buitrago") petitions this court for review of an April 17, 1992 decision of the Board of Immigration Appeals ("BIA") finding that his 1986 convictions for aggravated felonies made him ineligible for a waiver of deportability under § 212(c) of the Immigration and Nationality Act of 1952, 8 U.S.C. § 1182(c), as amended by · § 511 of the Immigration Act of 1990 ("1990 Act"). Pub.L. No. 101–649, § 511, 104 Stat. 5052. Section 212(c) allows otherwise deportable immigrants to apply to the Attorney General for a discretionary waiver of deportability. However, § 511 of the 1990 Act modified § 212(c) to make the waiver unavailable to immigrants convicted of an "aggravated felony," as defined at 8 U.S.C. § 1101(a)(43), who have served at least five years in prison. The question presented by this appeal is whether the BIA correctly applied § 511 retroactively.

## BACKGROUND

A. *Statutory Framework*

Under § 212(c) of the Immigration Act of 1952,

> Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General without regard to the provisions [setting forth various grounds for exclusion].

8 U.S.C. § 1182(c). While the statutory language is limited to aliens attempting to reenter the country, we have interpreted § 212(c), as have our sister circuits, to give aliens in deportation proceedings as well as exclusion proceedings the right to apply for a discretionary waiver. *See Francis v. INS*, 532 F.2d 268, 273 (2d Cir.1976) ("[f]undamental fairness" dictates that § 212(c) apply to resident aliens in deportation as well as exclusion proceedings); *see also Barreiro v. INS*, 989 F.2d 62, 63 (1st Cir.1993); *Tapia-Acuna v. INS*, 640 F.2d 223, 224–25 (9th Cir.1981).

In recent years, there has been a series of amendments to the immigration laws. Congress first passed the Anti–Drug Abuse Act of 1988 ("1988 Act"), which provided, *inter alia*, that an alien convicted of an "aggravated felony" would be subject to certain consequences under immigration laws. Pub.L. No. 100–690, §§ 7342–50, 102 Stat. 4469–73. For example, the 1988 Act made conviction of an aggravated felony an additional ground for deportation, *see* § 7344, 102 Stat. at 4470–71 (codified at 8 U.S.C. § 1251(a)(2)(A)(iii)), and barred aliens convicted of aggravated felonies from reentry into the United States for 10 years, *see* § 7349, 102 Stat. at 4473 (originally codified at 8 U.S.C. § 1182(a)(17) (1988) (prior to 1990 amendment)).

■ Congress next passed the 1990 Act, which amended § 212(c) to preclude an alien who has "been convicted of an aggravated felony and has served a term of imprisonment of at least 5 years" from seeking a discretionary waiver of deportability under § 212(c). § 511(a), 104 Stat. at 5052. The amendment applies "to admissions occurring after the date of the enactment of this Act." § 511(b), 104 Stat. at 5052. Since we have applied § 212(c) to deportation proceedings, § 511 is applicable to deportations as well. *Accord Barreiro*, 989 F.2d at 63. The amendment would apply to deportation proceedings occurring after the date of the amendment.

In 1991, Congress passed the Immigration Technical Corrections Act of 1991 ("1991 Act"), Pub.L. No. 102–232, 105 Stat. 1742, which provides, *inter alia*, that § 212(c) applies to aliens who have committed "one or more aggravated felonies...." § 306(a)(10), 105 Stat. at 1751 (codified at 8 U.S.C. § 1182(c)).

B. *Facts and Prior Proceedings*

Buitrago is a citizen of Colombia. Legally admitted into the United States as an immigrant in April 1972, he has remained in the United States since that time except for three vacations abroad. On March 7, 1986,

he was arrested in Dallas, Texas and charged with one count of conspiring to distribute cocaine, in violation of 21 U.S.C. § 846, and a second count of aiding and abetting the distribution of cocaine, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. On July 3, 1986, judgment was entered against him on both counts following a jury trial in the United States District Court for the Northern District of Texas. The Texas district court sentenced Buitrago, *inter alia,* to concurrent terms of twenty and fifteen years imprisonment. Buitrago has been imprisoned since his 1986 arrest and is now serving his sentence in the Federal Correctional Institution at Danbury, Connecticut.

On November 16, 1988, the Immigration and Naturalization Service ("INS") commenced deportation proceedings, alleging that Buitrago was deportable under 8 U.S.C. § 1251(a) due to his narcotics conviction. The immigration judge adjourned the first deportation hearing, held on June 18, 1991, to permit Buitrago to retain an attorney. At the hearing, Buitrago expressed a desire to apply for a discretionary waiver of deportability under § 212(c). He submitted his written application for this relief on June 27, 1991.

The deportation hearing resumed on July 31, 1991, although Buitrago had been unable to retain an attorney. The immigration judge found him deportable pursuant to 8 U.S.C. § 1251(a)(11) (1988) (amended and recodified at 8 U.S.C. § 1251(a)(2)(B)(i)). The Government contended that, under § 212(c) (as amended by § 511), Buitrago was ineligible to seek a discretionary waiver since the crimes for which he was convicted are included within the definition of "aggravated felony." On August 2, 1991, after hearing additional arguments regarding Buitrago's eligibility, the immigration judge found Buitrago ineligible for a waiver of deportation under § 212(c).

Buitrago appealed the immigration judge's decision to the BIA. On April 17, 1992, the BIA dismissed his administrative appeal on the grounds that Buitrago's deportability had been established by clear and convincing evidence and that he was ineligible for a waiver of deportability under § 212(c).

This petition for review followed.

## DISCUSSION

Buitrago challenges the BIA's decision on two grounds. First, he contends that § 511 does not apply retroactively, and thus, should affect only defendants convicted of "aggravated felonies" after the enactment of the 1990 Act, or, alternatively, after the enactment of the 1988 Act, which first introduced the concept of an "aggravated felony." Second, he argues that, even if § 511 should apply to defendants convicted prior to the enactment date, it should not bar his waiver application because at the time Buitrago applied for the waiver, at the commencement of his deportation hearing, he had not served a term of five years.

I. *Retroactivity of Section 511(a) of the Immigration Act of 1990*

The Supreme Court's position on the retroactivity of civil statutes is "somewhat unclear." *Morgan Guar. Trust Co. v. Republic of Palau,* 971 F.2d 917, 921 (2d Cir.1992). In *Bradley v. School Board of Richmond,* 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974), the Supreme Court held that "a court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." By contrast, the Court held in *Bowen v. Georgetown Univ. Hosp.,* 488 U.S. 204, 208, 109 S.Ct. 468, 471, 102 L.Ed.2d 493 (1988), that "congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result." We have previously discussed the tension between *Bradley* and *Bowen,* and will not repeat it now. *See Butts v. City of New York Dep't of Housing Preservation and Dev.,* 990 F.2d 1397, 1409–11 (2d Cir.1993). Buitrago contends that there is no language in § 511 requiring that it be applied retroactively to his 1986 convictions, and further, that the statutory language and legislative history favor prospectivity from 1990, the date of the enactment of § 511, or at the very least, prospectivity from 1988, the

introduction of the concept of "aggravated felony." Therefore, he argues, § 511 should not apply retroactively to his 1986 convictions pursuant to either *Bowen* or *Bradley.*

"The starting point in interpreting a statute is its language, for '[i]f the intent of Congress is clear, that is the end of the matter.'" *Good Samaritan Hosp. v. Shalala,* —— U.S. ——, ——, 113 S.Ct. 2151, 2157, 124 L.Ed.2d 368 (1993) (quoting *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984)). Buitrago submits that the plain language of § 511(b), providing that § 511(a) "applies to admissions occurring after the date of the enactment of [the 1990] Act," § 511(b), 104 Stat. at 5052, does not support a retroactive application of the statute. He contends that, because § 511 does not state that it applies to admissions occurring *on* the date of enactment, Congress intended for it to apply prospectively only. If § 511 applied to admissions taking place "on" the date of enactment, Buitrago argues, it would necessarily apply retroactively, because § 511 could not apply "on" the date of admission absent a conviction prior to that date. Therefore, he contends, Congress's decision to provide that § 511 applies only to admissions occurring "after" the date of enactment indicates a choice for § 511 to affect only aliens who were convicted of aggravated felonies after the date of enactment.

■ To bolster this argument, Buitrago refers to a number of provisions in the 1988 Act applicable to any alien convicted of an aggravated felony who sought admission into the United States "on or after" the enactment date of the 1988 Act. *See* §§ 7344, 7345, 7347, 102 Stat. at 4470–72 (codified at 8 U.S.C. §§ 1251(a)(2)(A), 1326, 1252(a)). We agree with Buitrago that the inclusion of "on" indicates that Congress intended for these provisions in the 1988 Act to apply retroactively. However, we do not agree that the absence of "on" in § 511 indicates a congressional intent for § 511 to apply prospectively only.

Buitrago's argument ignores the fact that Congress limited the application of § 511 to aliens who have served at least five year terms of imprisonment. If § 511 does not apply to aliens convicted of aggravated felonies prior to 1990, its directive would not affect any action by the Attorney General until 1995, five years from the date of the 1990 Act's enactment, or, under Buitrago's alternative construction, until 1993, five years from the date of the 1988 passage of the definition of aggravated felony. However, by its terms, § 511 took effect "after the date of the enactment of th[e 1990] Act." The focus of § 212(c) is action to be taken by the Attorney General, and, in the case of the § 511 amendment, there is a restriction on her discretion in the case of perpetrators of "aggravated felonies." We believe that the only sensible interpretation is that Congress intended its directions to the Attorney General to go into effect promptly "after the date of the enactment." As the First Circuit recently stated in holding that § 511(a) applied to a 1984 conviction for an aggravated felony, "it makes small sense that so substantial a stricture should not go into effect for five years from enactment." *Barreiro,* 989 F.2d at 64.

Buitrago also argues that, because the 1991 Act did not amend § 511 to provide specifically that aggravated felons include those aliens convicted "before, on, or after" the date of enactment of the 1990 Act, as it amended §§ 513 and 515 of the 1990 Act, *see* §§ 306(11), (13), 105 Stat. at 1751, 1752, Congress intended for § 511 to apply only prospectively. We disagree.

To be sure, the 1991 Act modified § 513(b) by providing that § 513(a) applies to convictions "entered before, on or after" the enactment of the 1990 Act. § 306(a)(11), 105 Stat. at 1751. But it did so in the wake of *Ayala–Chavez v. INS,* 945 F.2d 288, 294 (9th Cir. 1991), in which the Ninth Circuit held that § 513(a) applies only to aliens who committed aggravated felonies after the enactment of the 1988 Act, which introduced the concept of an aggravated felony. *See* § 7342, 102 Stat. at 4469.

As for the amendment of § 515, the 1991 Act similarly provided that it applied to convictions entered "before, on or after" the enactment of the 1990 Act. § 306(a)(13), 105 Stat. at 1752. However, this amendment was

enacted because § 515(b) of the 1990 Act contained an error in cross-referencing § 515(a)(1) in both (b)(1) and (b)(2) and did not apply uniform language to proceedings for asylum and deportation. § 515(b), 104 Stat. at 5053. The 1991 Act merely corrected these problems. *See* H.R.Rep. No. 102–383, 102nd Cong., 1st Sess., at 7 (1991), *reprinted in* 1991 U.S.C.C.A.N. 1372, 1378 (noting that § 306(a)(13) of the 1991 Act "corrects reference and conforms treatment of applications for asylum and withholding of deportation").

▇ Buitrago argues that, because Congress did not similarly amend § 511 of the 1990 Act, we must presume that Congress acted " 'intentionally and purposely in the disparate inclusion or exclusion.' " *Russello v. United States*, 464 U.S. 16, 23, 104 S.Ct. 296, 300, 78 L.Ed.2d 17 (1983) (quoting *United States v. Wong Kim Bo*, 472 F.2d 720, 722 (5th Cir.1972)). However, " '[n]ot every silence is pregnant.' " *Burns v. United States*, — U.S. ——, ——, 111 S.Ct. 2182, 2186, 115 L.Ed.2d 123 (1991) (quoting *State of Illinois Dep't of Public Aid v. Schweiker*, 707 F.2d 273, 277 (7th Cir.1983)). Section 511, unlike § 513, was never open to an interpretation that Congress intended it to apply prospectively only. And, in contrast to § 515, it did not contain confusion regarding its references and language. Thus, we conclude that Congress's "silence signifies merely an expectation that nothing more need be said in order to effectuate the relevant legislative objective." *Burns*, — U.S. at ——, 111 S.Ct. at 2186. As the Supreme Court stated in *Burns*, "[a]n inference drawn from congressional silence certainly cannot be credited when it is contrary to all other textual and contextual evidence of congressional intent." — U.S. at ——, 111 S.Ct. at 2186.

In *Burns*, the Supreme Court, in a Sentencing Guidelines case, upheld the parties' right to be notified whenever a district court is contemplating a *sua sponte* departure from the prescribed sentencing range notwithstanding the absence of an express provision to that effect. In light of the fact that Fed.R.Crim.P. 32(c)(3)(A) expressly requires ten days notice to the parties of the contents of the presentence report, the Court conclud-

ed that "construction of congressional 'silence' [as evidence of intent to omit notice of departure] would . . . render what Congress has *expressly* said absurd." *Burns*, — U.S. at ——, 111 S.Ct. at 2186 (emphasis in the original). The same reasoning applies in this case, where listening too closely to congressional "silence" would lead us to interpret § 511 as a super-prospectivity statute, and, thus, would render absurd Congress's provision that § 511 apply "after" the date of enactment.

Because we find that the plain language of the statute indicates a congressional intent that § 511 apply retroactively, we also reject Buitrago's argument that the structure of the 1988 Act compels the conclusion that § 511 of the 1990 Act applies prospectively only. *See Ayala–Chavez*, 945 F.2d at 291. Citing *Ayala–Chavez*, Buitrago contends that the 1988 Act establishes a framework of limiting the concept of "aggravated felonies" to post–1988 conduct in the case of deportation while imposing no such limitation in the case of reentry. *Id.* Given this framework, Buitrago argues that Congress intended § 511 to apply prospectively from 1990 or, at the very least, to convictions occurring after 1988.

However, there is no language linking § 511 of the 1990 Act with the provisions found in the 1988 Act, and, thus, no basis to infer that Congress intended § 511 to apply prospectively when the language of § 511 would require a waiting period of at least three years. Such an inference would unreasonably interpret § 511(b) to mean that § 511(a) applies to admissions "after" the date of enactment. Moreover, in § 515(a)(1) of the 1990 Act, which prevents aliens convicted of aggravated felonies from applying for or being granted asylum, the concept of aggravated felony expressly applies retroactively to a provision relating to deportation. § 515(b), 104 Stat. at 5053 (codified at 8 U.S.C. § 1158(d)). Thus, any framework that may have been established in the 1988 Act was abandoned in the 1990 Act.

## II. *Time Served in Prison*

Buitrago argues that § 511 does not apply to him even if applied retroactively because, at the time he applied for § 212(c) relief on

June 18, 1991, he had served less than five years in prison from the date of his conviction on July 3, 1986. The BIA affirmed the immigration judge's finding that Buitrago had served a term of imprisonment of at least five years, rendering him ineligible for § 212(c) relief, as of July 3, 1991. We agree with the BIA.

 Changes in law or fact occurring during the pendency of administrative appeals must be taken into account. *See Anderson v. McElroy,* 953 F.2d 803, 806 (2d Cir.1992). *A fortiori,* the same is true for such changes during the initial hearings and, thus, the immigration judge properly considered all the time Buitrago spent in prison as of August 2, 1991, the date of his decision. In *Anderson,* the court stated that "[w]hile Anderson's appeal to the BIA was pending ... he achieved seven continuous years as a lawful permanent resident and became eligible for § 212(c) relief." *Id.* Just as we credit aliens for time spent in the country while an appeal is pending before the BIA so that they are eligible for § 212(c) relief, we will also consider the time aliens spend in prison during the course of a hearing for purposes of rendering them ineligible for § 212(c) relief.

Buitrago argues that under *Matter of Ramirez–Somera,* No. A–38780688, 1992 WL 301623 1992 BIA LEXIS 19, Interim Decision: 3185 (BIA Aug. 11, 1992), the five year term must be measured by the date of the deportation hearing. *Ramirez* is inapposite. In *Ramirez,* the BIA held that the immigration judge incorrectly concluded that the alien, who had been convicted of an aggravated felony in 1989, was ineligible for a waiver under § 212(c) because the alien was sentenced to five years imprisonment, and would, at some point, have served five years. *Ramirez* stands solely for the proposition that under § 511, the judge cannot rely on how much time an alien will serve in prison, but must consider only how much time an alien has served. *Ramirez* does not address whether factual changes occurring during the pendency of a hearing may be taken into account.

## CONCLUSION

For the foregoing reasons, Buitrago's petition for review is denied.