Essaid MEZRIOUI, Petitioner,

v.

IMMIGRATION & NATURALIZATION SERVICE and Warden, Hartford Correctional Center, Respondents.

No. 300CV00109(JBA).

United States District Court,
D. Connecticut.

June 4, 2001.

Michael G. Moore, Law Offices of Maria De Castro Foden, Hartford, CT, Michael D. Shapiro, Suisman, Shapiro, Wool, Brennan, Gray & Greenberg, New London, CT, for petitioner.

Essaid, Mezrioui, Somers, CT, pro se.

James K. Filan, Jr., U.S. Attorney's Office, New Haven, CT, for respondents.

## RULING ON PETITION FOR WRIT OF HABEAS CORPUS

ARTERTON, District Judge.

For the reasons that follow, the petition for a writ of habeas corpus and motion for stay of deportation are DENIED.

### Factual Background

Petitioner, a native of Morocco, became a lawful permanent resident on January 22, 1985. He pleaded guilty to burglary in the third degree in January of 1987. On October 5, 1989 he was arrested and charged with Sexual Assault in the First Degree. He was convicted after a jury trial on November 1, 1990 and sentenced to fourteen years imprisonment on December 14, 1990. Prior to sentencing, he served a total of 182 days in jail, a period which was credited against his ultimate sentence. Petitioner's conviction was affirmed on direct appeal by the Connecticut Appellate Court in *State v. Mezrioui*, 26 Conn.App. 395, 602 A.2d 29 (1992), a published decision which provides details on the facts of the sexual assault conviction. The Connecticut Supreme Court denied his petition for certification. *State v. Mezrioui*, 224 Conn. 909, 617 A.2d 169 (1992). The INS then issued an order to show cause on March 9, 1994, charging the petitioner with being deportable based on the two convictions. While petitioner was incarcerated at McDougall Correctional Institution, five immigration hearings were held. At the first hearing on October 11, 1994, petitioner indicated that he wanted to seek counsel, and the hearing was continued to allow him to do so. Gov. Ex. 9. On January 3, 1995 the hearing reconvened, this time with Mezrioui represented by Attorney Michael G. Moore, his current counsel. Gov. Ex. 10. Petitioner conceded deportability and requested additional time to file a 212(c) application. The hearing on the merits of the 212(c) claim was further continued until July 20, 1995 but Attorney Moore failed to appear. Gov. Ex. 11. On November 14, 1995 the hearing was further continued until December 12, 1995, because petitioner was late in arriving at the hearing, and by the time he arrived his wife had left with a number of documents supporting his application. Gov. Ex. 12. On December 12, 1995 Mezrioui's application was heard on the merits, and documentary evidence in support was presented.

Immigration Judge Harriet Marple issued a written decision on August 12, 1996. She first noted that the statute in place at the time of Mezrioui's proceedings prohibited 212(c) relief for aliens who had served longer than five years in prison, and that

at the time of her decision Mezrioui fell within that category of excluded aliens, even though at the time he filed his 212(c) application he had served less than five years. She declined to hold the multiple postponements against him for purposes of determining his eligibility for 212(c) relief, blaming her own inexperience as the source of the delay. She therefore analyzed the merits of petitioner's 212(c) application, and weighed the documentary evidence submitted of his family ties and his employment history in the United States, as well as the testimony of Mezrioui, his wife, and the mother of his daughter. After concluding that the nature of his crime required Mezrioui to show "outstanding equities," she noted a numbers of discrepancies in the testimony, as well as Mezrioui's failure to express remorse for his crime or sympathy for his victim. She held that "respondent has failed to establish that he should be granted relief from deportation in the exercise of discretion." Ex. 14 at 10. The BIA dismissed Mezrioui's appeal, finding that he was statutorily ineligible for 212(c) relief as "the respondent has evidently now served over 5 years for a crime that constitutes an aggravated felony." Even if he was not barred from relief, the BIA also agreed with IJ Marple's exercise of discretion on the merits of Mezrioui's application, because "the respondent's equities, including his family ties, the length of his residence in the United States, or the evidence of hardship to him and his family … simply do not outweigh the seriousness of the respondent's criminal record." Gov. Ex. 15 at 2.

While Mezrioui's appeal was pending at the Board of Immigration Appeals (BIA), he filed a state habeas petition seeking to overturn his conviction because of his trial counsel's alleged ineffective assistance in conducting a pretrial investigation. Gov. Ex. 16 (Third Amended Petition). The Superior Court, Judge L. Paul Sullivan, denied the petition on March 10, 2000, finding that the efforts of the investigator employed by defense counsel were reasonable, and that there was no showing that had the investigator done more, it would have had any effect on the judgment. Gov. Ex. 17 at 7–8. Petitioner has appealed to the Appellate Court, and according to representations made to the Office of the U.S. Attorney by the state's attorney on the case, the briefing closed May 8, 2001, and the Appellate Court will likely not hear the case before its September 2001 term. See Gov. Mem. at 5.

Mezrioui filed the instant habeas petition on December 30, 1999, in which he alleges that the decision of the IJ was "contrary to the weight of the evidence" and was therefore an abuse of discretion, that his counsel provided ineffective assistance at his 212(c) hearing, that "new facts, including documents regarding the petitioner's rehabilitation, came to light after the immigration hearing," and that deportation prior to a hearing on his state habeas petition would deprive him of his rights under the Sixth and Fourteenth amendments.

Pursuant to an Order to Show Cause, the Government responded to Mezrioui's petition, and mounted five different challenges to the claims raised therein, each of which it argues is sufficient grounds for dismissing the petition. This Ruling follows.

### Discussion

The law extant at the time Mezrioui applied for discretionary relief was 8 U.S.C. § 1182(c), the old INA § 212(c). It provided that aliens lawfully admitted who temporarily proceed abroad voluntarily and who have lived in the United States for seven years "may be admitted in the

discretion of the Attorney General."[1] It continues:

> The first sentence of this subsection *shall not apply* to an alien who has been convicted of one or more aggravated felonies and has served for such felony or felonies a term of imprisonment of at least 5 years.

*Id.* (emphasis added). The Second Circuit has interpreted this provision as rendering ineligible an alien who had served four years and eleven months at the time of his 212(c) application, but who had served more than five years at the time of the IJ's decision. *See Buitrago–Cuesta v. INS*, 7 F.3d 291, 294 (2d Cir.1993). The Second Circuit reasoned as follows:

> Changes in law or fact occurring during the pendency of administrative appeals must be taken into account. *See Anderson v. McElroy*, 953 F.2d 803, 806 (2d Cir.1992). A fortiori, the same is true for such changes during the initial hearings and, thus, the immigration judge properly considered all the time Buitrago spent in prison as of August 2, 1991, the date of his decision. In *Anderson*, the court stated that "[w]hile Anderson's appeal to the BIA was pending ... he achieved seven continuous years as a lawful permanent resident and became eligible for § 212(c) relief." *Id.* Just as we credit aliens for time spent in the country while an appeal is pending before the BIA so that they are eligible for § 212(c) relief, we will also consider the time aliens spend in prison during the course of a hearing for pur-

poses of rendering them ineligible for § 212(c) relief.

7 F.3d at 295. While the point at which Mezrioui applied for 212(c) relief is unclear from this record, it is apparent that he had served more than five years in prison at the time of the IJ's decision. Under BIA precedent, pretrial confinement counts towards the accumulation of time served for various statutory provisions, *see Matter of Valdovinos*, 18 I & N. Dec. 343, 344–45 (BIA 1982) (pretrial time served credited in determining whether alien had served 180 days under 8 U.S.C. § 1101), and the Second Circuit's decision in *Buitrago–Cuesta* further supports this counting method, as it held that the immigration judge "properly considered *all the time* Buitrago spent in prison" as of the date of his decision.[2] Even excluding the 183 days Mr. Mezrioui served pre-sentencing, however, his eligibility for 212(c) relief evaporated, at the very latest, two days after the hearing on the merits, or December 14, 1995.

 Mr. Mezrioui thus became ineligible for § 212(c) relief either between the second and third hearing dates (the January 3, 1995 hearing at which Attorney Moore first represented the petitioner and the July 20, 1995 hearing at which Moore failed to appear), or two days after the hearing on the merits. In either case, he was ineligible for 212(c) relief at the time of the IJ's decision, the point which the Second Circuit identified as the relevant date for calculating eligibility for 212(c) relief in *Buitrago–Cuesta*. The IJ's ruling reflects discomfort with possible timing

---

**1.** Although by its terms, the statute only applies to lawful permanent residents who are attempting to reenter, it has been interpreted to provide relief to aliens in deportation proceedings as well as exclusion proceedings. *Francis v. INS*, 532 F.2d 268, 273 (2d Cir. 1976).

**2.** As Mezrioui gets credit against his sentence for pretrial time served pursuant to Conn. Gen.Stat. § 18–98d, logic suggests that those same periods should be included in the calculation for purposes of determining whether petition has served five years imprisonment and is thus ineligible for 212(c) relief.

consequences of delay in releasing the ruling, and cites a number of cases for the principle that Mr. Mezrioui should not be deprived of his rights due to her failure to render an immediate decision in the case. As the government points out, however, these cases involved deprivations of the right to counsel where either the five years had expired by the time the Seventh Circuit remanded the case to the IJ due to violations of the petitioner's right to counsel, *see Snajder v. INS*, 29 F.3d 1203, 1208 n. 12 (7th Cir.1994), or statutory amendments subsequent to the BIA appeal rendered the petitioner ineligible for certain relief, *see Batanic v. INS*, 12 F.3d 662 (7th Cir.1993) (when remanded by BIA for denial of right to counsel and IJ then applied subsequent statutory amendments that precluded asylum for aggravated felons, Seventh Circuit concluded that only way to cure defect was to remand and allow attorney to apply for asylum nunc pro tunc). In both *Batanic* and *Snajder* the alien had been completely deprived of his right to counsel over the course of the deportation hearings. Mr. Batanic was eligible for asylum at the time of the BIA remand to the IJ, and in *Snajder* the Seventh Circuit merely suggested that if Mr. Snajder was still eligible for 212(c) relief at the time his appeal to the BIA had been denied, the IJ "should take this consideration into account at the new deportation hearing." 29 F.3d at 1208, n. 12. Mezrioui, in contrast, had counsel throughout the course of the hearings (who he now claims provided ineffective assistance), and he was not eligible for 212(c) relief at the time of the IJ's decision, much less at the time of his BIA apppeal.

The *Buitrago–Cuesta* opinion contemplates that all prison time served as of the date the IJ renders the decision should be counted towards the five-year eligibility cutoff point. The BIA rejected the IJ's position that she had discretion to overlook expiration of petitioner's eligibility, holding that "the respondent has evidently *now* served over 5 years for a crime that constitutes an aggravated felony" and was thus ineligible for relief "despite the Immigration Judge's personal misgivings as to the timing of her ruling." Gov. Ex. 15 (emphasis added). Given the language of the statute referencing serving a term of imprisonment for an aggravated felony, the Court cannot say that the BIA's interpretation of the five-year cutoff provision and its application of this interpretation to petitioner is unreasonable. When reviewing a determination by the BIA, the Second Circuit has instructed lower courts to "accord substantial deference to the [BIA's] interpretations of the statutes and regulations that it administers." *Michel v. INS*, 206 F.3d 253, 262 (2d Cir.2000), *citing INS v. Cardoza–Fonseca*, 480 U.S. 421, 448, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987).

Mezrioui argues that *Buitrago–Cuesta* is no longer good law after the Second Circuit's decision in *St. Cyr v. INS*, 229 F.3d 406 (2d Cir.2000). The pertinent part of the *St. Cyr* decision, however, questioned whether *Buitrago–Cuesta*'s discussion of retroactivity principles had been altered by subsequent Supreme Court precedent. *Id.* at 420. No such retroactivity issues are present in the instant case, despite petitioner's reference to them in his response, because the five-year statutory cutoff was added by Section 511(a) of the Immigration Act of 1990 (IMMACT), 104 Stat. 4978, 5052 (1990), long before deportation proceedings were initiated in this case. The portion of *Buitrago–Cuesta* concluding that time served in prison during the course of a 212(c) hearing counted towards the five year ban for purposes of determining eligibility for a 212(c) waiver is still good law.

Further, the Second Circuit has interpreted the five year bar on 212(c) relief

contained in 8 U.S.C. § 1182(c) on another occasion, and has reached a conclusion in accordance with the BIA's decision and this Court's conclusion. An alien brought an equal protection challenge to the five-year statutory bar based on the different way the statute treats aliens who have served less than five years in *Giusto v. INS*, 9 F.3d 8 (2d Cir.1993). The *Giusto* court held that Congress was acting within its prerogative when it selected five years "as the line of demarcation" between those cases where an alien should receive relatively lenient treatment, despite an aggravated felony conviction, and those cases where such leniency was not called for. 9 F.3d at 10. It further held that equal protection was not violated due to the fact that the INS could choose to initiate deportation proceedings at such a time that rendered some aliens ineligible for relief:

> The INS may well, with respect to an alien sentenced to five years or more, initiate deportation proceedings prior to his service of five or more years if necessary to comply with the statutory requirement that such proceedings be commenced expeditiously, *see* 8 U.S.C. § 1252(i), in order to minimize the time the alien must remain in custody between the completion of his sentence and the resolution of the deportation proceedings.... Institution of deportation proceedings prior to the end of such an alien's prison term, however, is not designed to shorten the term of incarceration but only to facilitate deportation upon the completion of the alien's sentence.... *Thus, if the sentence is five years or longer, the mere fact that the INS initiated deportation proceedings early would not make the waiver available.*

*Id.* at 11 (emphasis added, internal citations omitted). The *Giusto* decision suggests that it is the sentence imposed and served, rather than the timing of a hearing

or a decision, that controls eligibility for 212(c) relief. The Court need not reach this question, however, because it is clear under both *Buitrago–Cuesta* and *Giusto* that Mr. Mezrioui was ineligible for relief at the time of the IJ's decision, and the fact that he was eligible at some time during the pendency of the deportation proceedings does not change that result.

Petitioner's citation to Judge Squatrito's unpublished opinion in *Lara v. INS*, 3:00cv24 (DJS) (D.Conn. Nov. 30, 2000) is also inapposite. The petitioner there had been denied the opportunity to apply for a 212(c) waiver at his first deportation hearing due to the BIA and the IJ's erroneous interpretation of recent amendments to the immigration laws. The BIA had remanded Lara's case to the IJ because of the lack of a complete transcript, and although Lara had served less than five years at the time of the IJ's initial decision or the BIA's remand decision, he had served five years by the time his case came up for a second hearing before the IJ. The IJ found him ineligible for relief due to this fact, and the BIA affirmed. On his habeas petition, Judge Squatrito concluded that but for the IJ and the BIA's erroneous interpretation of the retroactivity of the AEDPA amendments, Lara would have been eligible for a 212(c) waiver, and that Lara's case was distinguishable from *Buitrago–Cuesta*, because Lara did not become ineligible during the pendency of the administrative hearings. Mr. Mezrioui, like the petitioner in *Buitrago–Cuesta*, was rendered ineligible before the date of the IJ's decision, and in contrast to Mr. Lara, no error of constitutional significance occurred prior to the running of the five year period.

█ In further contrast to the petitioner in *Lara*, and a distinction that this Court finds critical, Mezrioui *was* allowed to ap-

ply for a 212(c) waiver, and the IJ denied his application on the merits, finding that he had failed to establish the criteria for a waiver of deportation. This decision was affirmed by the BIA, which held that *even if* his application was not time barred, he had not demonstrated that he was entitled to a waiver of deportation, because the equities in his favor did not outweigh the seriousness of his crime. Unlike the petitioners in *Lara, Snajder,* and even *Buitrago–Cuesta,* Mezrioui had the opportunity to fully pursue his application, and both the IJ and the BIA weighed in on its merits. Were the Court to find, therefore, that the IJ and the BIA erred in applying the five-year statutory bar to Mezrioui, the remedy would be that which he has already received—a full hearing on the merits of 212(c) application. To the extent petitioner asks this Court to review the IJ and the BIA's decision to deny him such discretionary relief, the Second Circuit indicated recently that federal courts have no such jurisdiction to review exercises of discretion, absent claims of unconstitutionality or legal error. *See St. Cyr v. INS,* 229 F.3d 406, 410 (2d Cir.2000) ("[a]lthough a federal court's habeas jurisdiction does not include all challenges that an alien may launch against his or her removal order, St. Cyr's habeas petition raises pure questions of law. *He is not challenging the BIA's refusal to exercise its discretion in his favor.* Rather, he is challenging the BIA's determination that it cannot legally consider St. Cyr's request to exercise its discretion. *Therefore, his habeas challenge to his final order of removal is the type of claim that is cognizable in the district court under 28 U.S.C. § 2241.*") (emphasis added).

■ Although constitutional and other legal claims are cognizable on a federal habeas petition, and Mezrioui raises a claim of ineffective assistance of counsel which will be construed as arguing that the statutory bar to 212(c) relief should be disregarded due to his counsel's alleged ineffectiveness, the Court finds no merit in this position. Assuming arguendo petitioner is somehow excused from the exhaustion requirement laid out in *Arango–Aradondo v. INS,* 13 F.3d 610 (2d Cir. 1994), and further assuming that Attorney Moore's failure to insist upon a more timely hearing so that a decision could be rendered before Mezrioui's eligibility ran out could be considered ineffective under *Rabiu v. INS,* 41 F.3d 879, 882 (2d Cir. 1994), the petitioner cannot show any prejudice resulting from this alleged instance of ineffectiveness.

In order to make out the "actual prejudice" prong for an ineffective assistance claim in the context of an application for 212(c) relief, petitioner "must make a prima facie showing that he would have been eligible for the relief and that he could have made a strong showing in support of his application." *Rabiu,* 41 F.3d at 882. The "new evidence" Mezrioui now submits does not suffice to make this "strong showing." He includes in his habeas petition a list of "reference documents on behalf of Mr. Essaid Mezrioui," presumably claiming that these documents could or should have been submitted on his behalf by Mr. Moore at his 212(c) hearing. At the 212(c) hearing, Mezrioui testified regarding the college courses he took while in prison, and letters from his professors in those courses were submitted to the IJ. *See* Gov. Ex. 13 at 35–36. He also testified regarding his participation in offender programs for his sexual assault conviction, and two documents to this effect were introduced into evidence. *Id.* at 39. From the Court's review of the hearing transcript, therefore, it appears that much of the documentation listed in his habeas petition that Mezrioui now claims should have been introduced was actually introduced at the

hearing. In addition, a number of the documents on his "reference list" bear post-hearing dates, and some post-date the IJ's decision. *See* Pet. Ex. D. Moore can hardly be faulted for failing to introduce documents that did not exist at the time, or for failing to reference treatment programs or college classes that Mezrioui had not yet completed at the time of the hearing. In any event, the IJ's decision balanced all of the evidence that had been introduced, and the deficiencies she identified in the record have not been remedied by petitioner here. *See, e.g.,* Gov. Ex. 14, Ruling at 9 (while Mezrioui testified to being enrolled in a sexual offender treatment program, no letter providing objective assessment of his progress was submitted); *id.* (respondent had not expressed remorse for his crime or sympathy for victim, and wife testified that he did not do it, indicating he has not admitted his culpability to her); *id.* at 9–10 (no evidence of participation in community activities or religious activities).

The final grounds cited by Mezrioui for staying his deportation is the pendency of his state habeas proceeding. Since Mezrioui filed his motion for a stay in this Court, however, the Superior Court has issued a ruling adverse to Mezrioui, and he has apparently appealed to the Connecticut Appellate Court. While the government has attached a copy of the Superior Court's opinion to its memorandum, the Court has not been provided with the record in the state habeas proceeding, nor has the petitioner indicated the issues that are on appeal. The attorney appointed to represent Mezrioui in his state habeas appeal has submitted a letter to the Court asking that the Court stay his deportation in order to allow the state habeas case "to mature to the final resolution." Letter from Sarah F. Summons dated May 23, 2001. On the record before the Court,

however, there is nothing from which the Court could infer that Mezrioui has a colorable claim, or any potential for success on his habeas appeal. In these circumstances, the Court declines to stay petitioner's deportation, based simply on the pendency of a habeas appeal.

### Conclusion

The Court concludes that Mezrioui is statutorily ineligible for 212(c) relief due to the length of his sentence served, and the lack of merit to his claim of ineffective assistance of counsel therefore does not avoid the effect of this statutory bar. His state habeas appeal also is not shown to provide reason for this Court to stay his deportation. Accordingly, the motion for a stay of deportation is DENIED, and the petition for a writ of habeas corpus is DENIED. The Clerk is directed to close the case.

IT IS SO ORDERED.