**Oswald O'Brian CLAVIS, Petitioner,**

v.

**John ASHCROFT, et al., Respondent.**

**No. 03–CV–1571 ARR.**

United States District Court,
E.D. New York.

June 2, 2003.

Oswald O'Brian Clavis, Oakdale, LA, Petitioner Pro Se.

Kristen Chapman, United States Attorney's Office, Eastern District of New York, Brooklyn, NY, for Respondent.

## OPINION AND ORDER

ROSS, District Judge.

Petitioner *pro se* Oswald O'Brian Clavis filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 on March 20, 2003. Currently in custody in the Immigration and Naturalization's (INS) detention facility in Oakdale, Louisiana, petitioner maintains that his continued detention without bond constitutes an unconstitutional deprivation of his right to substantive due process. Petitioner also argues that INS's refusal to allow him to apply for a waiver of deportation pursuant to former Section 212(c) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1101 *et seq.*, since repealed by § 304(b) of the Illegal Immigration Reform and Immi-

grant Responsibility Act of 1996 (IIRIRA), Pub.L. No. 104–208, sec. 803, 110 Stat. at 3009–3597 (1996), is unconstitutional. By order dated April 21, 2003, the court stayed petitioner's deportation. For the reasons given below, the stay is vacated and the petition is denied.

## BACKGROUND

Petitioner, a citizen of Guyana, has lived in the United States since 1980 as a lawful permanent resident. In 1989, he was convicted after a trial in the Northern District of Georgia of a number of narcotics offenses, including conspiracy to possess with intent to distribute more than fifty grams of cocaine base and maintaining a place within 1000 feet of an elementary school for the purpose of manufacturing, distributing, and using cocaine. Resp. Decl. Ex. 2. Petitioner was sentenced to concurrent terms of 188 and 120 months. *Id.* The conviction was upheld in part and reversed in part by the Eleventh Circuit on March 31, 1992. *Id.*

As a result of his convictions, on February 22, 1990, the INS[1] served petitioner with an order to show cause charging him as deportable as an alien convicted of an offense relating to a controlled substance and as an alien convicted of an aggravated felony drug trafficking offense. Resp. Decl. Ex. 3. Deportation proceedings began on June 18, 1991, but they were administratively closed at the request of the INS, apparently due to the fact that petitioner had sought appellate review of his criminal conviction. *See* Transcript of August 15, 2002, Hearing at 35, *attached as* Resp. Decl. Ex. 4. Proceedings recommenced on May 30, 2002, after petitioner had finished his criminal sentence and

been released to INS custody. Petitioner sought a waiver of deportation pursuant to Section 212(c) of the INA on the basis that his deportation would cause extraordinary hardship to his family, the members of which are allegedly American citizens living in the United States. Pet. ¶ 7.[2] The immigration judge refused to permit petitioner to apply for a waiver of deportation, ruling (1) that IIRIRA's repeal of Section 212(c) applied to his case and (2) that even under the pre-IIRIRA regime he was not eligible to seek such relief. Resp. Decl. Ex. 4. The Board of Immigration Appeals upheld the immigration judge's decision on February 26, 2003. *Id.* at Ex. 5. This petition followed.

## DISCUSSION

Petitioner raises three claims in support of his application for a writ of habeas corpus. He argues that his continued detention without bond violates his substantive due process rights. Second and third, he contends that the immigration judge's refusal to permit him to apply for Section 212(c) relief violates his equal protection and procedural due process rights.

*Venue*

The INS contends that venue is improper in the Eastern District of New York and seeks to have petitioner's case transferred to the Western District of Louisiana, the Northern District of Georgia, or the District of New Jersey. Because 28 U.S.C. § 2241 has no venue provisions, traditional venue considerations apply. *See Smart v. Goord,* 21 F.Supp.2d 309, 313 (S.D.N.Y.1998) (noting that habeas petitions brought pursuant to Section 2241 are considered civil actions for the purposes of

---

**1.** The INS has been dissolved and is now the Bureau of Immigration and Customs Enforcement, Department of Homeland Security.

**2.** "In broad terms, former section 212(c) invested the INS with discretion to waive deportation or removal for humanitarian reasons." *Greenidge v. INS,* 204 F.Supp.2d 594, 597 n. 4 (S.D.N.Y.2001).

28 U.S.C. § 1404). These include where the material events took place, where witnesses and records pertinent to the claim may be found, the convenience of the forum for both parties, and the court's familiarity with applicable laws. *Henderson v. INS,* 157 F.3d 106, 128 n. 25 (2d Cir.1998). The decision whether or not to transfer venue is committed to the broad discretion of the district court. *See* 28 U.S.C. § 1404(a) ("For the convenience of parties and witnesses, in the interest of justice, a district court *may* transfer any civil action . . . .") (emphasis added); *Stewart Org. v. Ricoh Corp.,* 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988) (observing that venue transfers are within the discretion of the district court).

Petitioner claims that his family resides in Brooklyn, New York, that he considers Brooklyn his residence, and therefore that the court should find that venue is appropriate in the Eastern District of New York. The INS argues that no records suggest that petitioner has any ties to Brooklyn and insinuates that he is fabricating his claim of familial residence. In light of the disposition of this petition, which requires no hearing and therefore no personal appearance by petitioner, the court finds the Eastern District a suitable venue and refuses to exercise its discretion to transfer the case.

*Continued Detention*

■ Petitioner argues that his mandatory detention pursuant to Section 236 of the INA, 8 U.S.C. § 1226, constitutes an unconstitutional deprivation of liberty. Because the court entered a temporary stay of deportation, up to this point petitioner has remained in INS custody pursuant to Section 236. *See Wang v. Ashcroft,* 320 F.3d 130, 147 (2d Cir.2003) (discussing INA § 241(a) and observing that a removal period beings on the date a court issues its final order and removes its stay of deportation). However, by this decision the stay is lifted, and from here onwards petitioner is held not pursuant to Section 236 but pursuant to Section 241, 8 U.S.C. § 1231(a)(6). *See id.* His Section 236 claim is now moot. *Id.* at 147; *see also Lawrence v. INS,* No. 00 Civ. 2154, 2001 WL 818141, at *6–7 (S.D.N.Y. July 20, 2001). Detention pursuant to Section 241 for the six months following the entry of the final order of removal—i.e., the removal of the stay—is presumptively constitutional. *See Wang,* 320 F.3d at 146; *see also Zadvydas v. Davis,* 533 U.S. 678, 682, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001).

■ Assuming *arguendo* that petitioner continues to be detained pursuant to Section 236, his due process claim is meritless. The Supreme Court recently ruled that "[d]etention during removal proceedings is a constitutionally permissible part of that process" and denied that mandatory detention without an individualized determination of an alien's flight risk does not violate Fifth Amendment guarantees of substantive due process. *Demore v. Kim,* —— U.S. ——, ————––——, 123 S.Ct. 1708, 1721–22, 155 L.Ed.2d 724 (2003).

*Section 212(c)*

The petition advances an argument in generalized, vague terms that the IJ's refusal to permit petitioner to apply for Section 212(c) relief violates his equal protection and due process rights. In his reply to respondents' opposition to the petition, he clarifies his argument. Because the INS began deportation proceedings against him prior to IIRIRA's enactment, he contends, the 1996 amendment to the INA removing Section 212(c) should not apply to his case.

■ IIRIRA sets forth "transitional" rules that apply to cases where the INS began removal proceedings prior to April 1, 1997, but entered a final order of removal after October 31, 1996. *Sol v. INS,* 274

F.3d 648, 651 (2d Cir.2001). Under the transitional rules, a petitioner may apply for Section 212(c) relief. *See United States v. Frias–Gomez,* 262 F.Supp.2d 11, 14–15 (E.D.N.Y.2003). Whether IIRIRA's transitional rules should apply to petitioner's case hinges upon when his deportation proceedings began. The INS filed its order to show cause on February 22, 1990, and the first round of hearings started on June 18, 1991. They were administratively closed shortly thereafter, and the INS did not start proceedings anew until May 30, 2002. If either of the earlier dates represents the commencement of proceedings, then the transitional rules govern. If not, IIRIRA's repeal of Section 212 applies.

Although the Second Circuit has yet to decide the issue of when deportation proceedings formally begin, several courts in the Eastern District of New York have held that "deportation proceedings are commenced when an Order to Show Cause or other charging document is filed." *Id.* at 15; *see also Pena–Rosario et al. v. Reno,* 83 F.Supp.2d 349, 360 (E.D.N.Y. 2000). This rule follows the regulations applicable to the INA. 8 C.F.R § 1003.14 (2003) ("[P]roceedings before an immigration commence ... when a charging document is filed."); 8 C.F.R. § 1003.13 (2003) ("Charging document means the written instrument which initiates a proceeding before an Immigration Judge. For proceedings initiated prior to April 1, 1997, these documents include an Order to Show Cause ...."). The First and Eleventh Circuits have adopted this rule as well. *Alanis–Bustamante v. Reno,* 201 F.3d 1303, 1309 (11th Cir.2000); *Wallace v. Reno,* 194 F.3d 279, 287 (1st Cir.1999). As the Eleventh Circuit explains, "[t]o conclude otherwise not only risks undermining the reasonable expectations of an alien, it also ignores the INS' power over an alien once it issues an order to show cause." *Alanis–Bustamante,* 201 F.3d at 1309–10.

There is no suggestion that the order to show cause filed against petitioner in 1990 was ever vacated or revoked. Even though his proceedings were administratively closed in 1991, petitioner remained under the authority of the INS while serving his criminal sentence. Thus, for IIRIRA purposes, petitioner's proceedings commenced on February 22, 1990. The transitional rules apply to his case, and it was error for the IJ to conclude otherwise.

■ This error was harmless, however, as the IJ correctly ruled that even under the INA's regime as it existed in the pre-IIRIRA era petitioner could not apply for a Section 212(c) waiver. Prior to its repeal, Section 212(c) provided:

Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General without regard to [various grounds for exclusion] .... The first sentence of this subsection shall not apply to an alien who has been convicted of one or more aggravated felonies and has served for such felony or felonies a term of imprisonment of at least five years.

8 U.S.C. § 1182(c) (1994). Although the statute only referred to aliens attempting to reenter the United States the Second Circuit long held that Section 212(c) applies in equal force to deportation proceedings. *Buitrago–Cuesta v. INS,* 7 F.3d 291, 292 (2d Cir.1993). Petitioner's crime of possession with intent to distribute cocaine within 1000 feet of an elementary school is an aggravated felony for the purposes of Section 212(c). *See Giusto v. INS,* 9 F.3d 8, 9 (2d Cir.1993). In 2002, when he was released into INS custody, petitioner had spent over twelve years in prison. Resp. Decl. ¶¶ 4, 5. The IJ thus found that the

five year bar rendered petitioner ineligible for Section 212(c) relief, even under IIRIRA's transitional rules.

Petitioner observes that at the time the INS served him with an order to show cause in 1990, he was eligible to apply for Section 212(c) relief. He had been a lawful permanent resident since 1980 and had served only one year in prison for his narcotics conviction.[3] By the time the agency reopened his proceedings in 2002, the five-year bar prevented his application. Since the agency's "undue delay and 'foot-dragging' technique in completing [his] deportation proceedings" for this accumulation of prison time prior to the decision on his Section 212(c) application, petitioner argues, due process and equitable estoppel should prevent the INS from now invoking the five-year bar.

■ The Second Circuit has not determined whether a delay between the commencement of removal proceedings and the decision on a Section 212(c) application, during which time a petitioner accumulates more than five years in prison, violates due process and precludes the INS from invoking Section 212(c)'s bar. In *Buitrago–Cuesta*, the Second Circuit considered a case in which the petitioner had applied for a Section 212(c) waiver on June 27, 1991, less than five years after he had been convicted of an aggravated felony on July 3, 1986. The IJ did not decide his application until August 2, 1991, or five years and one month after the petitioner's term of incarceration began. The court ruled that the IJ had properly considered all the time the petitioner had served up until the date of his decision. It reasoned, "[c]hanges in law or fact occurring during the pendency

of administrative appeals must be taken into account . . . . Just as we credit aliens for time spent in the country while an appeal is pending before the BIA so that they are eligible for § 212(c) relief, we will also consider the time aliens spend in prison during the course of a hearing for purposes of rendering them ineligible for § 212(c) relief." 7 F.3d at 296.

It is possible to distinguish *Buitrago–Cuesta* from the instant case. In the former, the petitioner applied for Section 212(c) relief a few days before his eligibility expired, and the IJ spent only a month or so deciding the application. Here, the INS has taken over thirteen years to complete petitioner's removal proceedings and therefore has not acted nearly as expeditiously. Under different circumstances, several district courts have held INS action, or lack thereof, effectively to toll the five year period. These cases have typically involved an instance in which the IJ makes an erroneous legal ruling that prevents an aggravated felon from seeking relief within the five year period. For example, in *Greenidge v. INS*, an aggravated felon applied for Section 212(c) relief at his deportation hearing, held less than five years after the commencement of his incarceration. The IJ erroneously judged the claimant ineligible for a discretionary waiver due to the passage of IIRIRA, a decision challenged in a habeas petition. The INS claimed that the claimant's petition should be denied, reasoning that, regardless of IIRIRA's application, by the time the petitioner's habeas petition was adjudicated he had spent more than five years in prison and was therefore ineligible for Section 212(c) relief under the pre-

---

**3.** Before IIRIRA, whether an aggravated felon was ineligible for Section 212(c) relief would have been determined by considering how much time he had spent in prison by the time the IJ considered his application, not how much time he had been sentenced to. *Matter*

*of Rarmirez–Somera*, No. A–38780688, 1992 WL 301623 (BIA Aug. 11, 1992); *see also Buitrago–Cuesta*, 7 F.3d at 296. Thus, the fact that petitioner was sentenced to 188 months in prison is irrelevant.

IIRIRA regime. Rejecting this argument, the court held:

> Although [*Buitrago–Cuesta*] seems to suggest that the five-year clock continues to run at least until an alien's administrative appeals are exhausted, it does not suggest what result should be reached where, as here, the IJ's decision subsequently proves to be incorrect. In this case, it is only because the IJ reached a decision adverse to petitioner that the proceedings were extended and petitioner's incarceration passed the five-year mark before the merits of his Section 212(c) application could be addressed. It is at least fairly arguable that petitioner should not forfeit the right to seek a Section 212(c) humanitarian waiver of removal solely as a result of an incorrect decision by the IJ.

204 F.Supp.2d at 598. Other courts have similarly concluded that a petitioner should not lose a right to apply for a discretionary waiver solely on account of INS error. *See Falconi v. INS*, 240 F.Supp.2d 215, 219 (E.D.N.Y.2002); *Webster v. INS*, No. 98 Civ. 1897, 2000 WL 33992388, at *3 (D.Conn. Nov. 30, 2000). *But see Davis v. Ashcroft*, No. 01 Civ. 6228, 2003 WL 289624, at *4–6 (S.D.N.Y. Feb. 10, 2003) (refusing to grant habeas relief even though the IJ rejected the petitioner's Section 212(c) request on erroneous grounds, and the petitioner accrued more than five years in prison as a result).

Petitioner, however, has made no allegation of INS error, only INS delay. The Second Circuit has not pronounced on the question of whether delay of this sort constitutes a violation of substantive due process meriting habeas relief. A case from the Seventh Circuit, *Singh v. Reno*, 182 F.3d 504 (1999), provides helpful instruction. In 1992 the INS issued an order to show cause to a petitioner convicted of an aggravated felony why he should not be deported. Although a hearing was convened in 1994, INS paperwork was not in order, so the IJ closed the proceedings. The petitioner then requested that the matter be recalendared so that it could be decided once and for all. Unfortunately, the INS "continued to drag its feet," *id.* at 507, and the proceedings did not recommence until 1997, after IIRIRA's passage. The IJ ruled that IIRIRA operated to preclude Section 212(c) relief on account of petitioner's conviction for an aggravated felony. *Id.* The INS argued that "an alien has no substantive right to have a claim heard at a particular time." While agreeing that this rule "may be correct in the abstract," the court held that the "unusual circumstance" of the case implicated a constitutional right. *Id.* at 510. In ruling on whether the district court had jurisdiction to hear his claim, the court stated:

> We are mindful that this safety valve—direct review of constitutional claims in the court of appeals—is an exceptional procedure. But we believe that [the petitioner's] Homeric odyssey through the administrative and judicial process adds up to a highly unusual case. Recall that six and a half years have elapsed since the INS issued the [order to show cause] and that, *of crucial significance*, it was [the petitioner] who pressed to have the matter resolved. Exercising our discretion in these exceptional circumstances, we decide that Singh may seek direct review of his due process claim in this Court.

*Id.* at 510–11 (emphasis added). The court did not decide the petition but remanded the case to the district court.

This case, while similar to *Singh*, differs in a crucial respect that renders petitioner's claim unavailing. Whereas in *Singh* the petitioner's window of opportunity to apply for Section 212(c) relief closed due solely to a lack of preparedness by the INS and in spite of his best efforts to have his case speedily resolved, here petitioner's

case was closed on account of petitioner's appeal from his criminal conviction. It is true that the INS did not reopen proceedings for another decade, but petitioner makes no allegation that he sought to have his case decided swiftly, a fact the Seventh Circuit held to be "of crucial significance" in *Singh*. Petitioner was not deprived of a right to press for Section 212(c) relief solely on account of INS error or inefficiency as were his counterparts in *Singh* and *Greenidge*. While petitioner complains of "footdragging," he offers neither evidence nor any more specified allegation of any INS misfeasance. Indeed, nothing in the record explains why the INS did not take action in petitioner's case until 2002, leaving the court to presume that it properly exercised its discretion to leave petitioner's case alone until he completed his criminal sentence. *See Haye v. Ashcroft*, No. 01 Civ. 414, 2002 WL 31761561, at *2 (D.Conn. Dec. 10, 2002) ("[T]he decision when to initiate deportation or removal proceedings is within the discretion of the INS and not subject to judicial review."). Petitioner has suffered no due process violation meriting habeas relief.

The IJ erred when he determined that IIRIRA's repeal of Section 212(c) applied to petitioner's case. However, as he correctly noted, petitioner was ineligible for a discretionary waiver even under the pre-IIRIRA regime. Even though he had been in prison for only a short while when the INS commenced deportation proceedings in 1990, petitioner had spent significantly longer than five years in custody by the time the INS restarted proceedings in 2002. This lengthy prison term prevents him from seeking discretionary relief.

*Estoppel*

■ Petitioner argues that the INS should be estopped from invoking the five-year bar on equitable estoppel grounds because its "willful, wanton, reckless and negligent delays" in proceeding against him deprived him of the right to apply for a discretionary waiver. Pet. Reply at 12. Equitable estoppel "is not available against the government except in the most serious of circumstances, and is applied with the utmost caution and restraint." *Rojas–Reyes v. INS*, 235 F.3d 115, 126 (2d Cir. 2000) (citations omitted). Petitioner must establish "both that the Government made a misrepresentation upon which the party reasonably and detrimentally relied and that the Government engaged in affirmative misconduct" in order to invoke equitable estoppel successfully. *City of New York v. Shalala*, 34 F.3d 1161, 1168 (2d Cir.1994).

■ Petitioner makes a conclusory allegation of affirmative misconduct, but he does not say what this misconduct consisted of other than to insinuate that the INS acted egregiously by leaving his case inactive from the commencement of proceedings in 1990 to the eventual decision ordering deportation in 2002. But unexplained delay alone cannot constitute affirmative misconduct on the part of the INS. *See INS v. Miranda*, 459 U.S. 14, 19, 103 S.Ct. 281, 74 L.Ed.2d 12 (1982); *see also Michalski v. United States*, No. 00 Civ. 1216, 2000 WL 1280972, at *1 (S.D.N.Y. Sept. 11, 2000). Without a more specific allegation of particular misdeeds by the INS, petitioner has not asserted a basis for equitable estoppel.

## CONCLUSION

For the reasons given above, the petition is denied and the stay on petitioner's deportation is lifted. The IJ improperly applied IIRIRA's repeal of Section 212(c) to petitioner's case. However, this error was harmless, as petitioner is ineligible for Section 212(c) relief under the INA in its pre-IIRIRA form. The failure to give petitioner a chance to apply for a discretionary waiver of deportation did not violate

his due process rights. Nor is petitioner's continued detention pending removal unconstitutional. The Clerk of the Court is instructed to enter judgment accordingly.

**SO ORDERED.**